## Clark et ux. *v.* Horowitz et al., Appellants.

*Negligence—Damages—Verdict—Reduction of verdict—Duty of lower court—Practice of appellate court.*

1. Where a verdict is excessive it is the duty of the lower court to control and reduce it, inasmuch as such court is in possession of all the facts as well as the atmosphere of the case, which will

enable it to do more even-handed justice between the parties than can an appellate court.

*Negligence — Automobiles — Pedestrians — Crossings — Evidence—Case for jury—Darting out by driver.*

2. Drivers of automobiles must exercise a very high degree of care and vigilance at street crossings so as to avoid injuring pedestrians who happen to be crossing the street at such points.

3. Such drivers must have their cars under control, and if necessary bring them to a stop within the shortest possible distance; the fact that traffic is open will not relieve the driver from observance of this rule, or excuse the running down of a pedestrian, who at the time is committed to the crossing.

4. In an action for damages for injuries to a pedestrian by an automobile at a crowded and much-frequented crossing, the case is for the jury and a verdict for plaintiff will be sustained where it appears that the driver, with knowledge of the character of the crossing, at the instant the open signal was given, darted out, around and in front of other vehicles, at an unlawful and negligent rate of speed, and ran down plaintiff who was committed to the crossing.

*Negligence—Damages—Evidence—Opinion of witness.*

5. In an accident case an interne of a hospital may be permitted to express an opinion as to the condition of plaintiff based on his own observation, although he is not a licensed physician, if it appears that he had graduated from a medical college, and had sixteen months' experience in a hospital.

*Negligence — Pleadings—Statement of claim—Evidence—Allegata and probata.*

6. In an accident case evidence may be received of plaintiff's mental condition and loss of memory, under averments, in the statement of claim, that plaintiff had received fractures and concussions of the brain and injuries to her nerves and nervous system.

7. In such case it is not necessary to set forth in the statement in detail the usual consequences of concussions and injuries to the nervous system.

Argued April 17, 1928. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 158, Jan. T., 1928, by defendants, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1926, No. 2750, on verdict for plaintiffs, in case of Walter Mc-Pherson Clark et ux. *v.* Samuel Horowitz et al., indi-

vidually and trading as the Harrow Novelty Co. Affirmed.

Trespass for personal injuries. Before TAULANE, J. The opinion of the Supreme Court states the facts.

Verdict for plaintiff, Sarah Clark, for $25,000 and for Walter McPherson Clark for $500, on which judgment was entered for the two for $6,000. Defendants appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*S. S. Herman,* with him *H. J. Gerber,* for appellants, cited: Krajkowski v. Traction Co., 282 Pa. 104; Thorne, Neale & Co. v. Mfg. Co., 66 Pa. Superior Ct. 121; Busch v. Calhoun, 14 Pa. Superior Ct. 578.

*Otto Kraus, Jr.,* with him *Golder, Felger & Lemisch,* for appellees, cited: Bowser v. Light, Heat & Power Co., 267 Pa. 483; Clinger v. Director General, 271 Pa. 88; Thomas v. R. R., 275 Pa. 579; Gilles v. Leas, 282 Pa. 318; Lewis v. Wood, 247 Pa. 545; Twinn v. Noble, 270 Pa. 500; Boles v. Electric Co., 89 Pa. Superior Ct. 160.

OPINION BY MR. JUSTICE FRAZER, June 30, 1928:

Plaintiffs, husband and wife, sued to recover damages for injuries sustained by the wife, who will be referred to here as plaintiff. The jury rendered a verdict for plaintiff in the sum of $25,000 and for the husband $500. Motions for a new trial or judgment n. o. v. were overruled and this appeal follows. At the first argument on these motions the verdict, by agreement of the parties and with the approval of the court, was reduced to $6,000, to include both claimants. This adjustment figures in the second of defendants' several assignments of error, on the ground that the action so taken was a recognition by the court of the "excessiveness of the verdict."

There is no basis for this assertion. The adjustment which apparently originated with defendants, was the result of mutual agreement of the opposing parties and was made because imposition of the full verdict of the jury would result in the bankruptcy of defendants. We have in the record sufficient explanation of this action by the learned judge of the court below in his opinion refusing the motions for a new trial or judgment n. o. v., where he said: "At the argument on the motion for a new trial both sides agreed that such a verdict would cause the bankruptcy of the defendants, and after discussion at the bar with counsel, the court reduced the verdict to $6,000. This reduction had the approval of counsel for plaintiff and the court was of the impression at the time that the reduction in the amount of the verdict would result in the settlement of the case. There has been no settlement but an appeal has been taken." It is the duty of the lower court to control the amount of the verdict; it is in possession of all the facts as well as the atmosphere of the case, which will enable it to do more even-handed justice between the parties than can an appellate court: Hollinger v. York Rys. Co., 225 Pa. 419, 426.

Plaintiff at the time of the accident was crossing Delaware Avenue at its intersection with Market Street, in the City of Philadelphia, when struck and injured by a motor truck driven by defendants' employee, a young man at that time 20 years of age. A close examination of the testimony clearly shows that plaintiff may not be accused of contributory negligence, and that the accident was the result of the unlawful, reckless and negligent driving of the truck by defendants' driver over a much-used public crossing. Delaware Avenue, which parallels the Delaware River, has a width of sixty-two feet from curb to curb at the crossing in question, and at this point, traffic, at the time of the accident, was regulated by officers who signalled with whistle and hands. The Delaware River ferry buildings extend along the east

side of the avenue, and it was plaintiff's purpose to cross the avenue from Market Street to the ferry. Above the avenue, opposite Market Street, extends the structure of the elevated railroad supported by pillars resting upon the ground near the middle of the avenue. The place of the accident has long been publicly known as a regular crossing for thousands of people going to and leaving the ferry buildings. Before plaintiff stepped from the curb on the west side of the avenue to cross, she looked carefully up and down that thoroughfare and noticing traffic had been stopped, vehicles not moving, she and other persons started toward the ferry. Plaintiff had apparently gone somewhat beyond the middle of Delaware Avenue and was near the elevated railway pillars when defendant's truck, operated by their driver at great speed, struck her. It is evident, from all the testimony, that the traffic officer stationed at the corner of Market Street and Delaware Avenue, apparently believing the pedestrians had reached the opposite side of the avenue, signalled for traffic to open at the time plaintiff was still on the roadway; the testimony leaves no doubt that defendants' driver, at the instant the signal was given for the movement of traffic, dashed out, around and in front of other vehicles, even before the latter had begun to move, and, continuing forward at an unlawful and negligent rate of speed, reached the point where plaintiff was walking, and, before she was aware of its proximity, she was struck by the front side of the truck, hurled into the air, and fell to the ground unconscious, her clothes torn, and seriously injured about the head and body. That this was the manner of the accident is shown by the testimony of the traffic officer on duty at the time on the ferry side of the avenue: "My partner had just blown the whistle for traffic to start, when this truck whizzed by me and as he went by I swung around and looked at this truck and was looking at him when he struck this woman. He was at the south side of Delaware Avenue and when the truck whizzed by me, I knew that he was

going to strike someone, because there is always people on the street and that is why I swung around, he was going so fast, and as I looked around I saw him strike this woman and drive her at least twenty-five feet."

Whatever may have been the actual speed at which the truck was driven,—the traffic officer and another witness of the accident testified it was from 30 to 40 miles an hour, while the truck driver and one of his witnesses united in saying it was not over 15 or 16 miles, —it is certainly clear, from testimony we may take as reliable, that the speed at the time plaintiff was struck was unlawfully, recklessly and dangerously excessive; and it is equally certain that the driver, without waiting for vehicles ahead of him to move when the signal was given by the officer, sped heedlessly and negligently forward before them and over a regular crossing which, it is fair to presume, he must have known was used by throngs of people daily and where care and precaution are demanded of every driver of vehicles, over such crossing. We have frequently and quite recently said, that drivers of automobiles must exercise a very high degree of care and vigilance at street crossings so as to avoid injuring pedestrians who happen to be crossing the street at such points. They must have their cars under control and if necessary bring them to a stop within the shortest possible distance: Johnson v. French, 291 Pa. 437, 439, and cases there cited. The fact that traffic is open will not relieve the driver from observance of this rule, or excuse the running down of a pedestrian, who at the time is committed to the crossing.

In the present case requirements as to proper and lawful driving at street crossings were ignored by defendants' driver. All facts were before the jury for consideration, the charge of the court was fair and explicit, and we find no reason to conclude that the evidence warranted a verdict in defendants' favor.

Defendants present as one of their assignments of error the refusal of the court to sustain objection of their

counsel to admission of testimony of one of plaintiff's witnesses, a hospital interne, as to plaintiff's mental condition at the time of her discharge from the institution, for the reason that he was not a licensed physician. In this ruling there was no error. The witness distinctly designated himself as an interne, but testified he had graduated from a medical college, from which he had a medical certificate, and afterwards had sixteen months of professional clinical experience at Jefferson Medical College. His testimony was not a scientific analysis of plaintiff's condition, but embodied only such general knowledge and opinion as he had gained by personal observation and study of her physical and mental condition while at the hospital. We do not see why such testimony may not be admitted under the circumstances of this case. As it well said in Tullis v. Kidd, 12 Ala. 648, 650: "One who exercises an art or trade is supposed to be acquainted with it. Thus a practicing physician would be presumed from that circumstance to be acquainted with the cause and cure of diseases; but it by no means follows that one who is not in the actual practice of medicine may not be skilled in the science so as to be able to give opinions as to the existence or cause of diseases. Clinical practice is doubtless a most efficient mode of acquiring such knowledge, and if one asserts an ability to give correct opinions upon any art or science from an acquaintance with the subject, acquired by observation and study, we cannot perceive on what ground he can be rejected because he has not been in the actual practice of his profession." In this case the witness had the advantage of a medical college education and important clinical experience in a noted medical institution. His testimony was based on his own observation, his opinions were his own and the value of his testimony was a matter for the determination of the jury.

We reach the same conclusion as to the contention of defendants that the statement of claim gave no notice

of plaintiff's mental condition, as shown by the evidence at the trial.    We adopt, as sufficient to sustain our ruling, the words of the court below in its opinion refusing the motion for a new trial or judgment n. o. v.: "There is no merit in the defendants' contention that the statement of claim gave no notice of the plaintiff's mental condition. When this point was raised at the trial, counsel for the defendant did not urge he was surprised, because he could not conscientiously do this, in that a week or so before the trial the defendants caused a well-known specialist to examine the plaintiff, and this expert discussed the case with the experts called by plaintiff.    The statement of claim is comprehensive enough to permit the testimony.    In paragraph 7 of the statement of claim the plaintiff alleges that she received fractures and concussions of the brain, injuries to her nerves and nervous system.    It was not necessary for the plaintiff to set forth in detail the usual consequences of concussions and injuries to the nervous system.    Loss of memory is not an uncommon result of a fracture of the skull or concussion of the brain."

Judgment affirmed.