Byrne et al. *v.* Schultz (Stone et al., Appellants).

Argued January 5, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Philip L. Leidy,* with him *James A. Montgomery, Jr.,* and *Layton M. Schoch,* for Samuel Stone and Phillip Roberman, individually, and trading as Grand Upholstered Furniture Co., appellants.—It must be assumed that appellant's car when struck was proceeding in a line of traffic across an intersection, in obedience to the signal of a traffic officer.

Appellant's driver was under no duty to anticipate a collision with opposing traffic: Newman v. Motor Serv-

ice Co., 298 Pa. 509; Wack v. P. R. T. Co., 93 Pa. Superior Ct. 206; Vivino v. Nevins, 98 Pa. Superior Ct. 574.

It is immaterial whether the signal to proceed is given by a traffic officer or by a stationary signal.

*Philip Wallis,* with him *Dickson, Beitler & McCouch,* for appellee.—No Pennsylvania decision deals with the same state of facts which are present in this case, but several of this court's decisions contain language which clearly establishes the fundamental proposition that due care is required at street intersections under all circumstances and whether or not a traffic officer is present: Gilles v. Leas, 282 Pa. 318; Clark v. Horowitz, 293 Pa. 441; McGurk v. Belmont, 297 Pa. 192; Galliano v. Electric Co., 303 Pa. 498.

OPINION BY MR. JUSTICE DREW, March 14, 1932:

This action in trespass grew out of a right-angle collision between a Hupmobile touring car owned and operated by defendants, Stone and Roberman, doing business as Grand Upholstered Furniture Company, and a motorbus owned and operated by O. G. Schultz, Incorporated, the other defendant. After suit was entered, and by agreement of counsel, the statement of claim was amended and Public Service Interstate Transportation Company was substituted as a defendant in place of O. G. Schultz, Incorporated. Verdicts were returned for plaintiffs, Frances E. Byrne, a minor, and Thomas J. and Nora Byrne, her parents, and after motions for judgment non obstante veredicto and new trial were discharged and judgments entered on the verdicts, the defendants, Stone and Roberman, individually, trading as Grand Upholstered Furniture Company, took these appeals. Defendants' request for judgment non obstante veredicto has been withdrawn, which leaves only the motion for new trial for our consideration.

The accident happened on July 6, 1929, at the intersection of Eighth and Race Streets, Philadelphia. The

minor plaintiff, Frances E. Byrne, was a passenger in the car of defendants, Stone and Roberman, which was proceeding south on Eighth Street, and crossing Race Street, when it was run into and upset by a motorbus of the transportation company, which was running east on Race Street.

The driver of defendants' car testified that when he came to the intersection the traffic officer standing there had traffic open on Eighth Street, and closed on Race Street; that, following a car immediately in front of him, he attempted to cross Race Street, without looking to the right or left for approaching traffic, relying solely upon the signal of the officer to cross; that he did not notice the bus until he was beyond the middle of the intersection, when it was "on top of" him, "not over five or eight feet away," and it was too late to avoid a collision. He stated he did not look because he could see the officer and relied on him.

The learned trial judge said in his charge to the jury, "I charge you as a matter of law that if you believe that the Hupmobile driver came to the crossing of Race Street and went ahead without looking to the right or left and relied solely on the invitation of the police officer to go ahead, he was guilty of negligence." This, and similar statements in the charge, reiterated in the opinion of the court in banc, after a new trial was refused and judgments entered on the verdicts, were assigned as error, and defendants appealed.

Defendants contend that their driver, having the signal of the traffic officer in his favor, was under no duty to make personal observation of the traffic conditions on the intersecting street, and that therefore it was not negligence for him to proceed without regard to other vehicles then approaching, inasmuch as he was under no duty to anticipate that the drivers of approaching vehicles would disregard the signal to stop. With this view we are unable to agree. It is apparent from the driver's own testimony that if he had looked he would

have seen the bus almost at the crossing and traveling at a speed which indicated that the driver intended to make the crossing, and he would have stopped his car, if it were under control, and this accident would have been avoided. There is no question raised regarding the negligence of the driver of the motorbus. That was gross, the jury found he ran by the "stop" signal, and no appeal has been taken from the verdict and judgment against his employer. If the driver of defendants' car had the legal right to rely entirely on the signal of the officer to cross, and under the circumstances could drive blindly over the street, without regard to any traffic at the intersection except that immediately in front of him, a new trial must be granted.

No Pennsylvania decision deals with the same set of facts which are presented in this case, but our cases have clearly established the fundamental proposition that due care is required at street intersections under all circumstances, whether or not a traffic officer or signal is present. We have repeatedly said that care at street crossings is the highest duty of drivers: Eckert v. Merchants Shipbuilding Corp., 280 Pa. 340; Gilles v. Leas, 282 Pa. 318; Johnson v. French, 291 Pa. 437; McGurk v. Belmont, 297 Pa. 192; Newman v. Protective Motor Service Co., 298 Pa. 509. In Gilles v. Leas, it is said, at page 320: "We have held over and over again that at street crossings drivers must be exceedingly vigilant to have their cars under such control that they may stop at the slightest sign of danger. If they do not, and an accident results, they are liable in damages for its consequences. In the crowded condition of our public thoroughfares, traffic officers cannot always clear the intersecting ways before giving a signal for vehicular traffic to move on the street that is being crossed by pedestrians." In Clark v. Horowitz, 293 Pa. 441, it is said at page 446: "They [drivers] must have their cars under control and if necessary bring them to a stop within the shortest possible distance: Johnson v. French, 291 Pa.

437, 439, and cases there cited. The fact that traffic is open will not relieve the driver from observance of this rule, or excuse the running down of a pedestrian, who at the time is committed to the crossing." And in McGurk v. Belmont, supra, at page 197, we said: "The fact that he was permitted by the traffic officer to proceed, did not justify him in driving recklessly over the regular crossing, regardless of the rights of pedestrians lawfully on the street......" It has been firmly established that a driver having the right of way at an intersection is still bound to use proper care under the circumstances to avoid collision with an approaching vehicle: Alperdt v. Paige, 292 Pa. 1; Robinson v. Berger, 295 Pa. 95; Campagna v. Lyles, 298 Pa. 352; Curry v. Willson & Sons, 301 Pa. 467; Bailey v. Lavine, 302 Pa. 273; Frank v. Pleet, 87 Pa. Superior Ct. 494. In Galliano v. East Penn Electric Co., 303 Pa. 498, 502, Justice MAXEY, speaking for the court, covered the situation admirably in this language: "A 'go' signal at a street intersection confers no authority on either a motorman or a chauffeur who receives this signal to proceed across that intersection regardless of other persons or vehicles that may already be within it. It is not a command to go but a qualified permission,—i. e., a permission to proceed lawfully and carefully in the direction indicated. It does not mean that the person receiving the signal may proceed without a care or thought as to the safety of others who may be in his path." The general principle is well expressed in 42 Corpus Juris 971, as follows: "But the duty to obey a traffic officer's signal or direction to go ahead is subject to the paramount duty of exercising due care and caution as to others who may be in the intersection, and the driver should not comply with such a direction where he sees, or with reasonable diligence should see, that such compliance will probably result in an accident." The rule is the same regarding traffic about to enter an intersection as that within it.

The law only makes obligatory the rule of common sense regarding the duty of a driver at the intersection of streets, where traffic is very dangerous because conflicting. He must be vigilant, must exercise a high degree of care, must have his car under complete control, and must look, and see what is visible, before attempting to cross the intersecting street. This duty has not been relaxed by the introduction of traffic officers and signals, both of which are intended to facilitate traffic and render crossings less dangerous. The driver has the help of the officer or mechanical device, but cannot dispense with due care on his part by relying on them solely. He is still bound to the same degree of care as before the introduction of these modern aids to travel. He must recognize them, and obey them, but he cannot use them under any circumstances to eliminate the exercise of due care on his part. The signal to cross is not a "command to go, but a qualified permission," and the qualification is "to proceed lawfully and carefully," as a prudent man would under the circumstances, which certainly requires looking to the right and left before entering upon the intersecting street. To hold otherwise, and as contended by defendants, would be to relieve drivers from vigilance and careful driving at street intersections, and license them to drive blindly where traffic is most dangerous. It would greatly increase the peril of street crossings for both pedestrians and motorists. It is for this reason that we would emphasize the fact that so far as the degree of care required of motorists or other drivers at street intersections is concerned, there has been no change in the law of negligence by the introduction of traffic officers and signals. The law is the greatest preventative of accidents, as is shown by the fact that when observed few accidents happen, and the protection it gives should not be lessened or destroyed by variations and refinements which add perils to travel by taking away necessary security.

The defendants rely on two cases, Newman v. Protective Motor Service Co., supra, and Wack v. P. R. T. Co., 93 Pa. Superior Ct. 206, to support their contention that their driver was not, under the circumstances, bound to look. These cases are not in point. In both it was held that a pedestrian having observed traffic conditions and seen no cause for alarm, was not negligent as a matter of law, in proceeding without further observation across the intersection on the signal of the traffic officer, and in reliance upon the assumption that such vehicles as might approach would obey the signal and not wantonly run him down. In each case it was held to be a question of fact for the jury to determine whether the pedestrian had exercised due care under the circumstances. A very different situation is presented by the facts in the case at bar. In the Newman and Wack cases both pedestrians looked before attempting to cross, and could see nothing which indicated danger; in this case the driver did not look at all before attempting to cross, and if he had done so he would have seen the bus almost at the crossing and traveling at a speed which indicated it intended to cross, all of which would have indicated to him imminent danger. He was clearly guilty of negligence. It is not a question of his relying upon another not to be negligent,—he did not rely upon anybody. He did not see the bus approaching because he did not look. If he had looked, had seen the bus and reasonably could have expected it to stop on the signal, a very different question would have arisen. In that event he would not be held as a matter of law to be negligent.

No other question is presented, and it follows from what we have said that the assignments of error must be overruled and the judgments of the court below affirmed. Judgments affirmed.