Henry *v.* Butler, Appellant.

Argued March 9, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*James J. Powell,* and with him *M. J. Murray, Jr.,* and *M. J. Eagen,* for appellant.

*John M. McCourt* of *Knapp, O'Malley, Hill & Harris,* for appellee.

Opinion by Cunningham, J., July 14, 1932:

About five o'clock on the afternoon of August 7, 1929, Frank E. Henry, the husband of plaintiff, while crossing, on foot, the eastern portion of the cartway of South Blakely Street, Dunmore, Lackawanna County, was struck and fatally injured by an automobile owned and driven by William Butler, the defendant. Henry's widow, claiming that his injuries were caused by the negligent operation of the automobile, brought her action in the court below and recovered a verdict in the sum of $1,255 upon which she now has judgment.

The defendant does not seek a new trial but in his appeal to this court alleges the court below erred in denying his motion for judgment in his favor, notwithstanding the verdict, which motion was based upon the refusal of his point for binding instructions.

South Blakely Street is a main thoroughfare, fifty feet from curb to curb, paved with brick and having two trolley tracks in the center; its general direction is north and south. At a point south of the scene of the accident it is crossed overhead by a railroad bridge and north thereof curves slightly to the northwest. Blakely is intersected, but not crossed, by Short Street which enters into it upon an acute angle from

the southeast. A drug store is located at the northeast intersection of Short with Blakely and an alley, opening into Blakely, runs along the north side of the drug store property. Trolley cars, both north and southbound, stopped at points approximately opposite the drug store; although there was no defined crossing over the cartway of Blakely for pedestrians, they were accustomed to cross from the sidewalk in front of the drug store or at the mouth of the alley, whether intending to board street cars or to proceed to the opposite sidewalk.

The appellant, Butler, lived near the intersection of Short with Blakely and had been driving automobiles in that vicinity for more than fifteen years; the jury could therefore reasonably infer that he knew pedestrians frequently crossed South Blakely Street in front of the drug store. He was called, as for cross examination, and designated, by placing marks upon a draft of the streets prepared by the county engineer, the locations essential to an understanding of the occurrence. He also testified in his own behalf and from his testimony as a whole these significant facts appear.

Immediately before the accident appellant was driving his automobile north on Blakely with the left wheels between the rails of the northbound trolley track. After passing under the railroad bridge and upon reaching the point at which the south side of Short intersects with the east side of Blakely, he had a clear view north on Blakely; no automobiles were preceding him nor were there any pedestrians within his view, except Henry, whom he then saw standing in the cartway of Blakely opposite the mouth of the alley and several feet beyond the curb. The distance between the point at which appellant first observed Henry and the place he was standing in the cartway, with his back toward appellant, was definitely fixed at sixty-five feet. Appellant testified he blew his horn and proceeded along the trolley track at the rate of

speed at which he had approached Short Street—ten miles an hour. Both sides agreed that the contact between appellant's car and Henry occurred at a point between the rails of the northbound trolley track, opposite and approximately twenty feet distant from, the place at which appellant first saw Henry standing.

One of appellee's contentions was that another automobile was coming south on Blakely on the western side of the cartway, the driver of which intended to make a left turn in front of appellant into Short, and that appellant swerved his car to his left and struck Henry while he was pausing on the northbound trolley track to permit the car approaching from the north to pass by him. Appellant admitted he saw the other car, "apparently ready to turn up Short Street," but denied he had changed his course by reason of this approaching car, which, according to his testimony, stopped at his left when the accident occurred and later turned around the rear of his car to proceed upon Short Street. As a result of Henry's contact with appellant's car he was thrown upon the cartway and his skull fractured in a number of places through coming in contact with the trolley rail, but the automobile was stopped almost instantly and did not pass over him.

On the question of speed, a witness for appellee estimated appellant was driving at the rate of twenty miles per hour but it appeared upon cross examination that this witness had had no experience in driving cars and only a limited one as a passenger therein.

Appellant's version of the accident reads: "When I got up almost even with the man he darted right out and struck the front fender, and fell right crossways, front of the car, on the track ...... He come on the jump ...... and he struck on the front end, whether you would call it the fender or the mudguard, I don't know; but he fell right across the front of the car and struck the right side of his head on the

pavement." He was corroborated by his wife, who was riding with him; she stated she also saw Henry standing in the cartway near the curb and that when they "got just a few feet from him" he put down his head, bent sideways, and ran into their car without having looked around.

The learned trial judge, LEACH, J., charged the jury that if they believed this account of the accident their verdict should be for the defendant. The verdict shows they did not believe the testimony of appellant and his wife.

Our inquiry, therefore, is whether there was testimony upon the part of the appellee entitling her to have her case submitted to the jury, or whether, as contended by appellant, her husband should have been declared guilty of contributory negligence as a matter of law.

Several matters were raised and debated at the trial which may be disposed of before considering the main proposition. As we view this case, the question whether the manner in which Short Street connected with Blakely created such an intersection as to subject appellant to the established and rigorous rule that care at street crossings is one of the highest duties of drivers and they must at all crossings be exceedingly vigilant to have their cars under such control that they may stop at the slightest sign of danger —see cases collected and cited in the recent case of Byrne et al. v. Schultz et al., 306 Pa. 427—is not necessarily involved.

Complaint is made in the third assignment that the trial judge, in his opinion discharging appellant's motion for judgment n. o. v., said: "The place where decedent attempted to cross was at a continuance of Short Street, sometimes known as Front Street, Blakely Street and an alley; and according to the testimony of plaintiff's witnesses was the usual place of crossing."

An inspection of the map, received in evidence, discloses a considerable triangle of cartway on the east side of Blakely and extending north to the alley which would not exist if Short Street had entered it at right angles; with this fact in mind the language of the trial judge does not indicate that he had any misconception as to the point of crossing.

The record discloses the jury returned to have the testimony of a witness read to them and for additional instructions. At that time a juror asked, "Is that particular corner regarded under the law as an intersection?" The reply of the trial judge was: "I don't want to charge you as a strict matter of law, one way or the other. I don't believe there is any law that says this or that particular place must be an intersection. An intersection is a part of a street where a person can go over. For instance, Blakely Street, or Short Avenue, a person going across the crosswalk there is a pedestrian, and an automobilist approaching such a place must expect that somebody is likely to be crossing there. It gets back to the definition of negligence, and that is, what would a reasonably careful, prudent and diligent person do under these circumstances?"

About all that can be said in this case is that the place where pedestrians might be expected to cross Blakely, was not as well defined as it would have been if Short had entered at a right angle.

Even if we assume that conditions as they existed would not justify a strict application of the rule, the material fact remains that appellant, under his own admissions, had an unobstructed view, for a distance of at least sixty-five feet, of the pedestrian off the curb and in the cartway; the case may therefore be considered as that of a pedestrian about to cross between crossings of whom a motorist has a clear view in ample time to bring his car under control.

We have already indicated there was no satisfactory

evidence that appellant was driving more than ten miles per hour, but, as remarked in Anderson v. Wood, 264 Pa. 98, 102, a "between crossings" case, "Speed is not the only element that enters into the question of negligence, and, regardless of it, a car may be under such imperfect control as to amount to negligent operation, and evidence of it would sustain the charge of negligence."

We turn then to the evidence for appellee, contradicting that for appellant. Mrs. Edith Wilson, one of her witnesses, was well acquainted with Henry and had walked behind him on her way to take a trolley car until he stopped in front of the drug store and near the corner of the alley. The material portion of her testimony reads: "Q. But Mrs. Wilson, I want to know how did Mr. Henry come to get hit. Was he standing there or walking over? A. He was walking across the street ...... Q. Now, how far over the street did he walk before he was struck? A. I imagine it was about to the first track, the track that would be going [north] up Dunmore Corners way. Q. When you saw the car that struck him— A. Yes. Q.—had you started to walk over to— A. No; I wouldn't step off the curb. Q. You were still on the curb? A. Yes. Q. And where was the car that struck Mr. Henry, when Mr. Henry started across the street? A. I didn't see where the car was when he started across the street. Q. Did you see the car at all? A. I saw the car. Q. You saw the car? A. Yes. Q. When did you see the car? A. When it struck Mr. Henry ....... Q. Now tell us how the car struck Mr. Henry? A. Well, it was the righthand fender knocked him ...... Q. Did you see any other car at that time? A. I saw a sedan, a red sedan. Q. A red sedan. Now, tell us about that red sedan? A. The red sedan was coming from Dunmore Corners way to go up Short Street ...... Q. Now tell us about the red sedan, and what it did, and what Mr. Butler's car did? A.

The red sedan stopped right aside of Mr. Butler's and then when he got out of that way— Q. No; before when it started to turn up Front Street, what did Mr. Butler do? A. I don't even know whether he seen that or not. I don't know whether he seen the car or not. That red car stopped right aside of his car. Q. And how was the red car going, in order to turn off this street? Was it passing in front of Mr. Butler's car? A. It had to pass in back—it was going to pass in front, and they turned the wheels and had to go around in back. Q. It started to pass in front? A. Yes. Q. And then they turned the wheel and started to go in back? A. Yes. Q. What did Mr. Butler do when they tried to do that? A. I couldn't answer that question."

This witness also testified that Henry, just before starting across the cartway, was talking to some friends and that she "saw him leave the men [on the sidewalk] and to cross the street."

A witness, who was standing on the opposite side of the street, testified he saw Henry cross the street from a point near the alley and continued: "He was crossing the street, and he was looking up, up towards North Blakely Street, and Butler was coming ...... Well, about 20 miles an hour ...... Then he struck him."

The location of the deceased at the time he was struck was fixed by the witness, Maffucci. After stating that he and a man by the name of Fox (now deceased) were standing near the corner of Short and Blakely when Henry passed them and the witness spoke to him, he continued: "Well, I ain't see crossing, but the only thing I saw, he was standing after, after went, and we was talk, Fox; but he had stand right in the middle of the track. Then the car—Mr. Butler come over and hit him. Q. And what track was it, Mr. Maffucci? Was it the track nearest your drug store or the track farthest away? A. It's near the drug store ......

Q. How long did you see Mr. Henry stand on the track? How long before he was hit? A. Oh, well, I don't know; maybe second, two seconds; I couldn't tell you that."

There was evidence that Henry was slightly deaf and there was no testimony directly contradicting appellant's statement that at no time did he look in the direction from which appellant was coming—a fact urged by counsel for appellant as making it the duty of the trial judge to declare Henry guilty of contributory negligence as a matter of law. We are unable to agree with this contention; in our opinion, the testimony in behalf of appellee required the submission of her case to the jury and we think the question of Henry's contributory negligence was also for that tribunal. Appellee was entitled to the benefit of the presumption that her husband had used due care and a jury could reasonably find from the evidence that his position in the cartway when appellant first saw him indicated he was about to cross the street. In view of appellant's admission that he saw Henry in the cartway it became his duty to so control and operate his car as to be able to avoid striking him when he stopped momentarily between the rails of the trolley track apparently for the purpose of permitting the automobile approaching from the north (which appellant admits he also observed) to pass along the western cartway. There was, according to appellant's own evidence, a clear space of about twenty feet between the point at which Henry paused and was struck and the curb on the east side of the street through which space appellant could have passed without injury to anyone. If the jury believed the evidence in behalf of appellee, and the verdict indicates they did believe it, there was testimony from which they could reasonably find that Henry's injuries were caused solely by appellant's negligent operation of his automobile.

Although the facts of this case are not entirely comparable with those in Kennelly v. Waropoyak, 266 Pa. 94, in that the defendant there suddenly changed his course to avoid a hole in the street and struck the plaintiff, yet in our opinion the case at bar falls within the principles there stated.

A closer case is Anderson v. Wood, supra; the facts in that case are comparable with those here present and the principles of law there stated are applicable to the situation disclosed by the evidence in this case.

The court below committed no error in refusing to give binding instructions for appellant or in discharging his subsequent rule for judgment n. o. v.

Judgment affirmed.