LaMarra et al., to use, Appellant, *v.* Adam.

270

Argued September 30, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*John J. K. Caskie*, Assistant City Solicitor, with him *Frank F. Truscott*, City Solicitor, and *Aaron W. White*, Assistant City Solicitor, for City of Philadelphia, appellant.

*Lynn L. Detweiler*, for appellees.

OPINION BY FINE, J., January 14, 1949:

Three separate trespass actions were instituted, all of them arising out of a right angle collision between the automobile of William Adam, Jr., and a police car of the City of Philadelphia, which occurred at or about the middle of the intersection of Girard Avenue with Sixth Street in that city. All actions were tried together before the same jury which returned verdicts awarding damages for personal and car injuries to William Adam, Jr., plaintiff, and damages to his wife, Jean, co-plaintiff, for personal injuries. Separate verdicts in favor of William Adam, Jr., defendant, denied damages to Rocco LaMarra and William A. Sims, police officers involved in the collision, in the actions brought by them, individually and to the use of the City of Philadelphia. The City was likewise denied a recovery for damage to its property which it sought by way of a counter-claim. The court below having dismissed the appellants' motions for new trials and judgments n. o. v. and having entered judgments on the verdicts, these appeals followed.

The evidence adduced, viewed most favorably to appellees (*Delair v. McAdoo*, 324 Pa. 392, 396, 188 A. 181), warrants the following findings of fact: William Adam, Jr. and Jean R. Adam, his wife, on October 12, 1945, about 1:00 a.m. were proceeding south on Sixth Street in the City of Philadelphia in their automobile,

and, as they approached the intersection of that street with Girard Avenue, their car was being operated at an approximate speed of twenty to twenty-five miles per hour. At the same time William A. Sims, a member of the city police force, was operating a police car and was proceeding west on Girard Avenue towards its intersection with Sixth Street. Accompanying him in the car were Rocco LaMarra, another policeman; a doctor and a father with his prematurely born child. The police car was en route to Jefferson Hospital where the baby was to be placed in an incubator.

Girard Avenue east of Sixth Street is sixty-four feet wide from curb to curb. Girard Avenue west of Sixth Street is eighty-four feet wide. There are east and west bound trolley tracks in the center of Girard Avenue and a single trolley track in the center of Sixth Street. The streets were dry and visibility good. When Adam reached the intersection he looked to his right and left and observed only one car approaching from his left "some distance away," "perhaps 100 feet or so." He could neither discern the color of the car,—a red police car—nor estimate its speed. No horn, whistle or other signal was sounded or given by the operator of the police car. The signal traffic light controlling the traffic was, and remained, green in favor of Adam and was red for Girard Avenue traffic. Relying upon his observation of the traffic and traffic light in his favor, Adam continued forward and committed himself to the intersection. When the front wheels of his car reached the first rail of the west bound trolley tracks, he again observed the police car, which was then about fifteen feet away, and was proceeding directly toward his car at a very fast rate of speed. He attempted to avoid a collision by accelerating the speed of his car. The attempt failed and the police car crashed into the left side of his car immediately in front of the door. The impact so affected the operation of the steering gear and

the brakes of his car that Adam could not control it and it proceeded across Girard Avenue and crashed into an iron telegraph pole.

"Motorists about to cross such intersections must be highly vigilant and exercise extreme care in avoiding accidents and not merely depend for a 'safe passage' exclusively on some theoretical 'right of way' which they may possess or think they possess. Abstract rights sometimes have to yield to concrete facts": *Weinberg v. Pavitt,* 304 Pa. 312, 322, 155 A. 867. Testing Adam's conduct by this standard of care it cannot be said he fell short of its requirements. Cf. *Adams v. Gardiner,* 306 Pa. 576, 160 A. 589. The court below was justified in refusing to say as a matter of law that in the situation that presented itself to Adam, according to the testimony of himself and his witnesses, a collision appeared reasonably likely unless he stopped his car and yielded his right of way to the appellants.

The operator of a motor vehicle must, at all times, exercise reasonable care in the circumstances. He must have his car under such control that it can be stopped before doing injury to any person or thing in any situation reasonably apt to arise in the circumstances: *Reidinger v. Lewis Jones, Inc.,* 353 Pa. 298, 45 A. 2d 3; *Schofield v. Druschel* 359 Pa. 630, 59 A. 2d 919. Equally strict is the prohibition upon unqualified assertion of a right of way, whether the right of way exists on a through highway (*McCormick Transportation Co. v. Philadelphia Transportation Co.,* 161 Pa. Superior Ct. 533, 55 A. 2d 771) or by reason of a favorable traffic signal (*Zurcher v. Pittsburgh Rwys. Co.,* 353 Pa. 212, 44 A. 2d 581). One having a right of way is not protected from the consequences of an arbitrary exercise of that right: *Schall v. Penn Transit Co.,* 352 Pa. 129, 42 A. 2d 278. A right of way is a qualified right and a plaintiff driver who possesses that right but who fails to heed ordinary precautions regarding observation of

other vehicles, their speed, control or other factors of which his senses warn him may be held guilty of contributory negligence as a matter of law.

Contributory negligence will, however, "be judicially declared only where it is so clear that reasonable minds cannot differ as to its existence": *Reidinger v. Lewis Jones, Inc.,* supra, 353 Pa. 298, 300, 45 A. 2d 3. Whether Adam was negligent in the operation of his vehicle was properly submitted to the jury, who found by their verdicts that he exercised care. The evidence, considered as it must be most favorably to Adam, and giving him the benefit of all inferences and deductions reasonably to be made therefrom, does not so clearly establish contributory negligence that a court could properly declare the same as a matter of law. *Byrne v. Schultz,* 306 Pa. 427, 160 A. 125, relied upon by appellants, is not controlling here. In that case a jury returned verdicts for plaintiffs and defendant appealed. It was there held that the evidence amply supported the finding by the jury that defendant's failure to observe traffic and reliance solely upon a favorable signal by a traffic officer clearly established negligence. The Court said (p. 434) : "It is not a question of his relying upon another not to be negligent,—he did not rely upon anybody. He did not see the bus approaching because he did not look. If he had looked, had seen the bus and reasonably could have expected it to stop on the signal, a very different question would have arisen. In that event he would not be held as a matter of law to be negligent." In the instant case Adam did observe the oncoming car "approximately 100 feet away." No indication, by sound or otherwise, was given by the appellant driver that he did not intend to recognize and obey the traffic signals. Adam had no knowledge that the approaching car was a police car on a mission of mercy. The jury could properly infer that Adam, having observed traffic, and having, in his judgment, assured himself within

reasonable limits that he could safely cross Girard Avenue, was warranted in proceeding. He did not proceed blindly, relying upon a favorable traffic signal. "Blind reliance on a favorable traffic signal is fatal to recovery. Byrne v. Schultz, 306 Pa. 427, 160 A. 125; Galliano v. East Penn Electric Co., 303 Pa. 498, 154 A. 805. But to look and to see nothing of danger is not blind reliance. Graff v. Scott Bros., Inc., 315 Pa. 262, 266, 172 A. 659. A motorist need not anticipate that after he is committed to the crossing another will travel 50 to 60 feet to the intersection, pass a red light and run into him. Harris v. Moran, 121 Pa. Superior Ct. 16, 182 A. 660. Moreover, since plaintiff was crossing a two-way street, he had a duty to look to his right as he approached the middle (Freedman v. Ziccardi, 151 Pa. Superior Ct. 159, 30 A. (2d) 172); even without the additional protection of the signal the failure to continue to look to the left, having looked at the curb line, is not contributory negligence as matter of law. Lewis v. Hermann, 112 Pa. Superior Ct. 338, 342, 171 A. 109; Lockhead v. Nierenberg, 143 Pa. Superior Ct. 507, 511, 18 A. (2d) 472." *Sommer v. Blacka,* 153 Pa. Superior Ct. 643, 645, 34 A. 2d 830.

The facts, as concluded by the jury, show that Adam, having the "green" signal in his favor, approached and entered the intersection in a careful manner. There was no other vehicle observable to impede his travel south on Sixth Street. He had the right to assume within reasonable limits that traffic on Girard Avenue would obey the "red" signal and come to a stop before entering the intersection. In this case there was no blind recognition or dependence on, of traffic signals nor slavish obedience to the assumption of the exercise of care by another; when common sense, prudence and care, if needed or exercised, would have, in the realities of the situation, shattered that assumption and would have directed a safer course. Here he was justified in relying

on the assumption the car approaching the intersection would not disregard the traffic signal which was against it and would not run into his car which was plainly visible but would come to a stop before entering the well lighted intersection.

Was the police car operated in reckless disregard for the safety of others? A police car operated in chase or apprehension of law violators or suspects or an ambulance when traveling in emergency[1] is exempt from The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 5, 1937, P. L. 1718, regarding speed (§1002(f) 75 PS 501), traffic signals (§1026(d) 75 PS 635), entries upon through highways and stop intersections (§1016(d) 75 PS 591); and, when operated upon official business with audible signal, the exemption applies to the right of way rule (§1014(b) 75 PS 573). These exemptions are conditional upon the vehicle being operated "with due regard for the safety of all persons using the highway"; they do not protect the operator "from the consequences of a reckless disregard of the safety of others," or "from the consequence of an arbitrary exercise of [the] right of way."

---

[1] The Vehicle Code, Act of May 1, 1929, P. L. 905, Art. X, §1026, as amended by the Act of June 5, 1937, P. L. 1718, §5, 75 PS 635 provides: "It shall be unlawful for the driver or operator of any vehicle . . . to disobey the directions of any traffic signal placed in accordance with the provisions of this act, unless otherwise directed by a peace officer. . . . . Red [or 'Stop']—Traffic facing the signal shall stop before entering the intersection, and remain standing until green [or 'Go'] is shown. . . . (d) The traffic signal interpretations set forth in this section shall not apply to vehicles, when operated with due regard for safety, *under the direction of the police, in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violation,* nor to fire department or fire patrol vehicles when traveling in response to a fire alarm, nor *to ambulances when traveling in emergencies.* This exemption shall not, however, protect the operator of any such vehicle from the consequences of a reckless disregard of the safety of others." (Italics supplied.)

The municipality is jointly and severally liable with the operator for damages (Act of May 1, 1929, P. L. 905, §619, as amended by the Act of June 29, 1937, P. L. 2329, §1, 75 PS 212) caused where such negligence is of a reckless nature. *Reilly v. Philadelphia,* 328 Pa. 563, 195 A. 897. As stated by Mr. Justice LINN while on the Superior Court: "Recklessness implies conscious appreciation of the probable extent of danger or risk incident to contemplated action, while negligence in the legal sense implies knowledge only of a probable source of danger in the act": *Lloyd v. Noakes,* 96 Pa. Superior Ct. 164, 168. In the Restatement, Torts, §500 (p. 1293), it is set forth that a person has acted in reckless disregard for the safety of others "if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." Neither the speed at which the car was traveling nor the operation of the car through a red light are enough to make out a case against the appellant, provided there was no "reckless disregard of the safety of others." Conceding the testimony of Adam and his wife on the failure of the police car to sound its horn or siren or give others audible warning of its approach may be placed in the category of negative testimony, it is buttressed by other testimony there were no unusual noises about the intersection immediately preceding the collision and that it was rather quiet at that hour—1 :00 a.m. Paul Grinkewitz, a stranger to the parties, testified he was standing on the northeast corner of the intersection and was talking with Joseph Redman and Joseph Morgenster (both in Florida at the time of trial) when he noticed the police car "coming up [Girard Avenue] very fast . . . it was coming at a teriffic rate of speed."

His attention was attracted to the police car by the method of its operation, particularly so when he noticed the red light against Girard Avenue traffic. He testified: "Q. Did it sound any warning of any kind? A. No, I didn't hear any sound. Q. No horn? A. No. Q. You were standing out in the open? A. Yes. Q. Was there any unusual noise in the intersection to prevent you hearing a horn? A. No sir. Q. Were there any other cars except these two cars at the intersection? A. No. . . . . Q. There was no noise to prevent you hearing a horn if it had been blown? A. No. Q. You had every opportunity to hear a horn or a siren? A. That is right." The testimony of Grinkewitz is of higher quality than that criticized in *Williams v. Pittsburgh*, 349 Pa. 430, 37 A. 2d 540, and it, together with other testimony of the plaintiffs, would support the finding that the police car gave no audible warning of its approach. While the hour of the accident militates against recklessness, we cannot say as a matter of law that it was not recklessness to drive a police car or ambulance at forty-five miles per hour through a red light, particularly where another car was committed to the intersection, plainly to be seen and to whose operator no audible or cautionary signal was given of the emergency [2] mission of the oncoming car. The principle enunciated in *Mansfield v. Philadelphia*, 352 Pa. 199, 202, 203, 42 A. 2d 549, is applicable here: "While, as previously stated, a fire vehicle [police car or ambulance] is not ordinarily limited as to speed and is permitted to run through a red light, certainly recklessness of operation cannot be denied if, in exercising those prerogatives, it fails to give due warning of its approach and if the operator pays no attention whatever to the traffic which is crossing an intersecting street; moreover, he cannot be heard to say that he did not see what must have been clearly visible to him had he looked. . . . We are of opinion, therefore, that the evidence was quite sufficient to justify the jury

---

[2] Cf. *Oakley v. Allegheny County*, 128 Pa. Superior Ct. 8, 193 A. 316.

in finding, as it did, that this fire vehicle [police car or ambulance] was being operated, at the time of the accident, with a reckless disregard for the safety of others on the highway, and that such operation was a causal factor of the injuries inflicted upon the minor plaintiff."

"What constitutes a reckless want of care on the part of the operator of a motor vehicle varies with the circumstances of the particular case": *Cavey v. Bethlehem,* 331 Pa. 556, 558, 1 A. 2d 653. The essential elements of recklessness are present in this case; viz., the operation of the police car at a high rate of speed through a red signal without audible warning to a car, proceeding through the intersection on a green light and plainly visible on a broad, well lighted thoroughfare, created a situation of grave peril and unreasonable risk of bodily harm to other users of the highway, which the operator of the police car knew or should have known would arise from his conduct. The fact that the police officer was engaged in the performance of his duties did not relieve him of the duty of care at intersections, nor absolve the city from liability for his negligence in the course of duty.

What has been said with regard to the alleged contributory negligence of Adam, the husband, and the negligence of the appellants makes unnecessary any discussion of the allegation of contributory negligence on the part of the wife, Jean Adam. There was no evidence, peculiarly applicable to her conduct, which would convict her of negligence while absolving her husband. Our discussion likewise amply shows that the verdicts were not against the weight of the evidence.

Appellants assigned as error a portion of the charge which was in substance that if as Sims testified he was traveling eighteen miles per hour and did not see the

Adam car, although there was nothing to obstruct his vision, until it was immediately in front of him, the jury would be warranted in finding he was driving in a reckless manner. No exception thereto was taken at the conclusion of the charge, nor was the court requested to amplify or to correct the same in any way. There is no merit to the exception when the charge is viewed in its whole context. Moreover, as appellants did not avail themselves of the opportunity to specifically call the court's attention to the alleged inaccuracy nor request additional instructions, they cannot now complain because the verdict which they chanced is adverse. *Meholiff v. River Transit Company*, 342 Pa. 394, 20 A. 2d 762; *Saar v. Saar*, 143 Pa. Superior Ct. 528, 17 A. 2d 745.

We are convinced that the evidence was sufficient to justify the jury in finding, as it did, that the operation of appellants' car was in reckless disregard for the safety of others on the highway. The verdicts of the jury will not be disturbed.

The assignments of error are overruled and the judgments are affirmed.