## Graff *v.* Scott Bros., Inc., Appellant.

Argued April 17, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*S. S. Herman,* of *Herman & Harris,* for appellant.

*Fred Taylor Pusey,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 21, 1934:

On March 12, 1932, between 9:10 and 9:30 a. m., Graff, the appellee, was driving his Ford sedan southwardly on 57th Street, approaching Chestnut Street (a

one-way street) in Philadelphia. When he was 20 feet
north from the north curbline of Chestnut Street the
traffic light on that street showed green to him. At the
same time and place he saw four automobiles eastbound
on Chestnut Street, halted in apparent obedience to the
traffic light which showed red to them. Three of these
automobiles were abreast on the north side of Chestnut
Street; there was an open space south of them sufficient
to permit the passage of another automobile; then a
fourth eastbound automobile stood close to the south
curb. As plaintiff was proceeding across the intersec-
tion, he was violently crashed into by the automobile
operated by defendant's chauffeur. This had come
through the open space just described. There was ample
testimony to sustain the averment that the driver of de-
fendant's car was proceeding at an unlawful rate of
speed. A witness who was standing on the northwest
corner of the intersection at the time of the accident tes-
tified not only that the traffic light was green for the
57th Street traffic and therefore inferentially red for the
Chestnut Street traffic, but he said he saw three or four
parked eastbound cars halted on Chestnut Street wait-
ing for the green light; and that he saw defendant's car
hit plaintiff's car "just as the light was flashing green
on Chestnut Street." He heard the brakes in defend-
ant's car "crunching" and he described the force of the
impact of defendant's car against plaintiff's car as "a
terrific hit. ...... It sounded like a locomotive pound-
ing into the side of a wall." He said that when he first
heard the brakes in defendant's car, "it was still 'Go' for
57th Street and could not be 'Go' for Chestnut Street."
Appellant's automobile came through the intersection
"at a terrific speed" and struck plaintiff's automobile be-
tween the two doors on the right-hand side, driving it to
the curb on the southeast corner and turning it over, and
knocking plaintiff unconscious. The latter said he did
not see defendant's car until the instant of collision.

Graff sued Scott Brothers for personal injuries and damages to his automobile. Subsequently Scott Brothers sued Graff for damages to its automobile; the verdict was for the defendant. In the case now before us there was a verdict for plaintiff in the amount of $7,530. There was a motion made for a new trial in each case, and also for judgment n. o. v. in the case in which Graff was the plaintiff. In the case in which Scott Brothers was the plaintiff a new trial was refused. In the case in which Graff was plaintiff, a remittitur was filed, reducing the verdict to $5,530, and judgment was entered on the verdict as reduced, the rule for judgment n. o. v. being dismissed.

It was claimed by the appellant that appellee was guilty of contributory negligence and should have been so declared as a matter of law, and therefore judgment should be entered for the defendant n. o. v. In considering this motion the evidence in behalf of appellee must, of course, be taken as verity. He testified that he proceeded across the street with his "eyes from the road to the light until" he "was partly in the intersection"; and that the light was still green when he went or passed under it; that he passed the three automobiles waiting for the green light on Chestnut Street, and as he came to the fourth one near the curb, the automobile of defendant came through the open space "at a terrific speed" and struck him. Since Graff's testimony (which is amply corroborated) indicated clearly that he was proceeding across the intersection in obedience to the traffic signal, we fail to see how he can be adjudged guilty of contributory negligence as a matter of law.

Appellant contends that the law is that every person entering an intersection has the "duty of making due observation before entering an intersection, and this regardless of whether or not he had the right of way." This proposition is sound but we find nothing in plaintiff's testimony which convicts him of failure to make "due observation." He made a sufficient "observation"

to see at his right three automobiles at a standstill, facing eastward. This also indicated to him that eastbound traffic had been stopped, by a red signal. He was asked in cross-examination: "You didn't look to see if there were any cars coming from the west that could come through the open space?" He answered: "Just at the time, no." Appellant apparently bases its claim of contributory negligence on that question and answer. The requirement of due care does not mean that after a driver of a car approaching an intersection has been given the green traffic signal, and after he has seen that several cars on the street which he is seeking to cross, have halted in obedience to a stop signal, that he must still continue to make further observation to ascertain whether or not some car not then within reasonable view might not be coming up to dart through an open space between the halted cars. The law does not impose any such extravagance of duty upon a driver. In the first place the law recognizes the fact that the man at the wheel of a car cannot use his eyes exclusively in making observations of the right and left distant terrain. Certainly the fact that he, after seeing the traffic light and the arrested traffic, did not make further observations, does not disclose such negligence on his part that the court would be justified in declaring it as a matter of law. There is nothing in Byrne v. Schultz, 306 Pa. 427, 160 A. 125, cited by appellant, which is in conflict with this conclusion. The driver in the instant case did not offend against the principle that one approaching an intersection must look to the right and to the left. The very fact that he saw three cars standing abreast at the right of the intersection shows that he looked in that direction. He was under no obligation, as appellant contends, "to see how many were back of the three cars abreast." He was under no obligation, as appellant also contends, "to see if there were any cars coming from the west through the open space." Plaintiff was asked this question on redirect examination: "With the three cars

lined up and halted on Chestnut Street, facing east, could you have seen any cars that sneaked up from the rear and shot past?" He answered: "I could not. Q. You could not have seen that? A. That was obstructed." He also testified on cross-examination that he saw the open space south of the third parked car. This indicated that he was making an observation to the right.

In the Byrne Case, supra, this court said: "In this case the driver did not look at all before attempting to cross, and if he had done so he would have seen the bus almost at the crossing and traveling at a speed which indicated it intended to cross, all of which would have indicated to him imminent danger. He was clearly guilty of negligence. It is not a question of his relying upon another not to be negligent—he did not rely upon anybody. He did not see the bus approaching because he did not look. If he had looked, had seen the bus, and reasonably could have expected it to stop on the signal, a very different question would have arisen. In that event he would not be held as a matter of law to be negligent." Plaintiff in the present case *did* look and *did* rely upon others not to be negligent. Seeing the four eastbound automobiles stopped on Chestnut Street, he had the right to assume that no other automobile would dart through the open space across the right of way which was his at that time. This court said in Weinberg v. Pavitt et al., 304 Pa. 312, at 322, 155 A. 867: "Motorists about to cross intersections must be highly vigilant and exercise extreme care in avoiding accidents and not merely depend for a 'safe passage' exclusively on some theoretical 'right of way' which they may possess or think they possess. Abstract rights sometimes have to yield to concrete facts." We reiterate this principle here but we find in the record no such violation of it by plaintiff as to convict him of contributory negligence. By his testimony he had both a "theoretical" and an actual "right of way." He not only looked ahead but he

looked *to the right,* where he saw the halted cars. He was under no obligation to look far down the street to ascertain whether or not some motorist was coming at a reckless rate of speed which would carry him across the intersection in defiance of the red traffic signal. Furthermore, in his calculations, he had the right to assume traffic from his right would stand still until it was given the green signal. We said in Adams v. Gardiner, 306 Pa. 576, 583, 160 A. 589: " 'Everyone to whom a duty is due has a right to assume that it will be performed. ...... He may go on the assumption that all precautions required by statute or established rule or custom will be taken': 20 R. C. L., section 101, page 117. However, this assumption like many others must yield to the realities of the situation, and, if the car on the left, even though further away from the intersection than the car on the right, approaches the intersection at such a high rate of speed as to make a collision at the intersection likely, should the driver on the right relying on his 'right of way' push on, it would be the manifest duty of the latter to yield his 'superior right' in the interest of the safety of both motorists and of the public." In accordance with this principle, if the plaintiff had, before entering the intersection, seen the defendant's car "approaching the intersection at such a high rate of speed as to make a collision at the intersection likely" it would have been his duty to have "yielded his 'superior right' in the interest of" his own and others' safety. But he did not see the defendant's car approaching the intersection at a high rate of speed, and there is no evidence that this failure thus to see was due to any inattentiveness amounting in law to negligence. The counter-charge that his carelessness contributed to the accident was for the jury, and it absolved him. In McCracken v. Curwensville Boro., 309 Pa. 98, 114, 163 A. 217, we cited with approval the following: " 'It is an established principle that if there is any credible evidence from which a reasonable conclusion can be drawn in support of the claim

of either party in the trial of a case, the question must be left to the jury. ...... A verdict should not be directed if on all the facts and circumstances there is room for fair and sensible men to differ in their conclusions, or, as it is sometimes stated, [if] the evidence is not such that honest minds could reach but one conclusion': 26 R. C. L., pages 1067, 1069, section 75. See also Heh v. Consolidated Gas Co., 201 Pa. 443, 50 A. 994."

Every person crossing any road intersection must exercise "due care" under the circumstances. Circumstances are those things present, or reasonably likely to be present, before the intersection is crossed. In taking "due care" appellee was not bound to anticipate that defendant's car would "come through there [i. e., through the traffic halted by the red signal] with terrific speed" (as appellee testified it actually did). Nothing appellee was under legal obligation to do in the exercise of "due care" under the circumstances could have acquainted him with either the fact or likelihood that defendant's car would do what it was described by plaintiff and disinterested witnesses as having done. The way defendant's car was handled at the time and place was a circumstance which plaintiff was not bound to anticipate. Human beings are charged with the legal duty of taking steps to avoid only those evil results which are reasonably foreseeable. Judge BROWN of the court below aptly said in his opinion discharging the rule for judgment n. o. v.: "To require one proceeding with a 'go' signal, *even after* he is in the intersection, to be continually watching traffic approaching *but not yet in or at* the intersection, with his automobile under such control as to stop it immediately to avoid coming into contact with an automobile disobeying the traffic signal, would obviously prevent the necessary and desirable movement of traffic."

The judgment is affirmed.