Oakley, Appellant, *v.* Allegheny County.

Argued May 5, 1937. 

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Edward O. Spotts, Jr.,* with him *W. D. Grimes,* for
appellant.

*Charles F. Patterson,* of *Patterson & Sherrard,* for
appellee.

OPINION BY PARKER, J., July 15, 1937:

The plaintiff, the owner and driver of an ambulance,
brought this action in trespass to recover property
damage suffered as the result of a collision with defend-
ant's car at a street intersection. Plaintiff secured a
verdict of a jury and the court below entered judgment
for the defendant n. o. v. The plaintiff has appealed,
complaining of the entry of judgment and of the re-
fusal of his motion for a new trial. We are all of the
opinion that the court correctly held the plaintiff guilty
of contributory negligence as a matter of law.

The plaintiff having had a verdict in his favor we must consider the testimony in a light most favorable to him, resolving conflicts therein in his favor and giving him the benefit of every inference of fact. We will so review the evidence. The collision occurred at the intersection of Montgomery Avenue and Federal Street in the city of Pittsburgh. The latter street is approximately fifty feet in width between curbs and runs at this point about east and west, and the course of Montgomery Avenue is approximately north and south. Plaintiff was driving his ambulance south on Montgomery Avenue, at about 9:30 P. M., November 17, 1933, a rainy evening, at the rate of fifteen or twenty miles per hour and defendant's car was moving east on Federal Street at about the same rate. The pavement was wet and artificial light furnished fair illumination. The two machines met in the southwest quarter of the intersection. It is practically conceded that, except for superior rights claimed by plaintiff owing to the fact that he was operating an ambulance, plaintiff would not be entitled to recover; at least, the argument of the appellant is predicated entirely on the fact that his car was being used as an ambulance.

Plaintiff was transporting a patient on a stretcher from a point on South Negley Avenue on the east side of the Allegheny River to the Presbyterian Hospital on the west side of that river and was within a few short blocks of the hospital when the accident occurred. Plaintiff had gone through several red traffic lights and as he approached Federal Street he was faced with another red light. With reference to the condition of the light at the time, plaintiff said: "Turned red just in front of me." He also testified: "When we approached Federal street the light had just switched from green to yellow, to red, just in front of me, and a car had stopped in front of me, just about the time I arrived; but there I moved to the left of that automobile and

proceeded to cross Federal street." He sounded his siren as he approached the intersection in question. One witness who was near the intersection said that he heard the siren back three blocks and that it continued to sound until the collision. Plaintiff also called the driver of defendant's car as his own witness and that driver testified that he did not see plaintiff's car until about the time of the collision or hear the siren.

The Vehicle Code, Act May 1, 1929, P. L. 905, §1026, as amended by Act June 22, 1931, P. L. 751 (75 PS 635), provides: "It shall be unlawful for the driver or operator of any vehicle ...... to disobey the directions of any traffic signal placed in accordance with the provisions ...... of this act, unless otherwise directed by a peace officer ...... Red or 'Stop',—Traffic facing the signal shall stop before entering the intersection, and remain standing until green or 'Go' is shown alone ...... (d) The traffic signal interpretations set forth in this section shall not apply to vehicles, when operated with due regard for safety, under the direction of the police, in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violation, nor to fire department or fire patrol vehicles when traveling in response to a fire alarm, nor to ambulances when traveling in emergencies. This exemption shall not, however, protect the operator of any such vehicle from the consequences of a reckless disregard of the safety of others."

The Supreme Court, in *Galliano v. East Penn Elec. Co.*, 303 Pa. 498, 502, 154 A. 805, said: "A 'go' signal at a street intersection confers no authority on either a motorman or a chauffer who receives this signal to proceed across that intersection regardless of other persons or vehicles that may already be within it. It is not a command to go but a qualified permission,—i. e., a permission to proceed lawfully and carefully in the

direction indicated. It does not mean that the person receiving the signal may proceed without a care or thought as to the safety of others who may be in his path."

In approaching a street intersection there is a duty imposed on all to act with prudence and avoid injuries to others. "It is the duty of the driver of an automobile in approaching a street crossing to have his car under control and observe if vehicles are approaching on the intersecting street, and, in case a car or truck is first at the crossing, that vehicle must be given an opportunity to cross the intersecting street and due care used to avoid collision": *Simon v. Lit Bros.*, 264 Pa. 121, 123, 107 A. 635. Also, see *McClung v. Penna. Taximeter Cab Co.*, 252 Pa. 478, 97 A. 694; *Dunn v. Phila. R. T. Co.*, 111 Pa. Superior Ct. 102, 110, 169 A. 258.

We are all of the opinion that the court below properly entered judgment for the defendant. The Vehicle Code does not grant to ambulances the right, under all circumstances, to disregard a red light. By subdivision (d), recited above, it is only when "traveling in emergencies" that ambulances are permitted to run through red lights and even then they may not operate with "a reckless disregard of the safety of others." The only evidence throwing any light on the question of emergency is that a patient was being transported on a cot from his home to a hospital. There is not any other evidence as to the physical state of the patient or any evidence that it was necessary for the ambulance to proceed at an unusual speed without regard to the usual rules governing movement of traffic.

The privilege of going through a red light is, in any situation, one to be exercised with due regard to the circumstances. The instruments involved are capable of causing such damage to life, limb and property that the failure to exercise the privilege with discretion may

cause disastrous consequences. The driver of an ambulance has a responsibility not only to other users of the highway but also to the patient that he may be transporting. It is the duty of the driver of an ambulance who anticipates taking an unusual course through traffic to know something about the necessity for haste. If he intends to operate his conveyance contrary to the usual rules of the road, he must at least first have a valid reason to believe that an emergency exists and even then he must not operate his vehicle with "a reckless disregard of the safety of others." The first duty of the plaintiff was to know that an emergency existed— "a combination of circumstances which calls for immediate action, an exigency." He should know that there was a necessity for such haste as justified his going through the red light and thereby imperiling the safety not only of other users of the street but also of his patient.

There was an interne in the ambulance in charge of the patient for the time. Although the interne was out of the state at the time of the trial, we find no evidence of an attempt to take his deposition. In fact there is no evidence of an effort to secure other expert or lay testimony as to the condition of the patient. Surely it would have been possible to have secured the evidence of the physician in charge of the patient, the hospital records, or the testimony of the members of the family or household of the patient, which evidence would have thrown some light on the question of emergency. The burden was on plaintiff to show an emergency and he failed to produce testimony on the subject. The mere fact that the plaintiff was transporting a patient on a cot did not justify an inference that the welfare of the public or the patient should be imperiled by bucking traffic. It may well have been that the patient's good would have been promoted by going at a slow and even rate of speed rather than blundering against traffic.

14

The plaintiff having failed to show any emergency he was not justified in going through the red light; he is therefore guilty of contributory negligence and cannot recover for the damage to his ambulance. If he arbitrarily persisted in taking a superior right of way to which he thought he was entitled, his mistake does not excuse him.

Not only was there a failure to show an emergency, but the operation of the vehicle of plaintiff was in reckless disregard of the rights of others. While the plaintiff testified that on approaching Federal Street he looked to the right and to the left and did not see any car approaching, yet he showed by his own witness that at that very time defendant's car was approaching from the right and must have been in or at the intersection at the time. If he had looked properly he would have seen the other car. The operator of an ambulance intending to go through a red light is bound to take sufficient time to observe the movement of traffic which ordinarily has a superior right of way and control the movement 'of his car accordingly. This conclusion is in exact accord with the Vehicle Code and to adopt any other rule would lead to disastrous consequences.

Plaintiff knew the light was red for him and that a car proceeding ahead of him and in the same direction had stopped for that light, and still he pulled around the stationary car and into the intersection at a rate, as he testified himself, of from fifteen to twenty miles per hour. The fact that a car stopped for the red light immediately in front of him showed a surrender of the right of way to those using the intersecting street and was an additional reason for the exercise of a caution that was not exhibited by plaintiff ( *Graff v. Scott Bros.*, 315 Pa. 262, 172 A. 659).

While there was ample evidence that plaintiff operated his siren, it was shown by his own witnesses that the operator of defendant's car did not hear the

siren. Defendant's car was of the closed type, a street car and other automobiles were using the street at that point at the time, and the location was near the center of a large city. These facts should have been taken into account by plaintiff. Regardless of negligence on the part of defendant's driver, the plaintiff was guilty of contributory negligence as a matter of law. The principles involved are much the same as those in the case of *Asher & Son v. Warner Co.*, 103 Pa. Superior Ct. 569, 158 A. 292.

The plaintiff in its argument has asked for a new trial in order that it may produce evidence on the subject of emergency. The lower court was of the opinion that a new trial should not be granted. In cases of this type we will not reverse the lower court for a failure to grant a new trial unless there is clear evidence of an abuse of discretion. We cannot say that it was an abuse of discretion to refuse the plaintiff a new trial so that he might obtain evidence which he could and should have produced at the original trial. If we were to follow a different course there would be no end to litigation.

Judgment affirmed.