

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

April 5, 1950

Hon. George B. Butler, Chairman
Board of Insurance Commissioners
Austin, Texas            Opinion No. V-1034

Re: Legality of funeral serv-
ice policy "plan" of the
American National Insur-
ance Company.

Dear Mr. Butler:

Your recent request outlines a "plan" in-
stituted by American National Insurance Company and
one Ben Williams to sell life insurance under a
"Funeral Service Policy" in conjunction with the issu-
ance by Williams, operating under the name of Insured
Funeral Service, of a so-called "Funeral Service Con-
tract" wherein Williams undertakes to approve a list
of Funeral Directors and to obtain their participa-
tion in providing funerals for policyholders. Speci-
men policies, funeral service contracts and various
supplementary instruments are attached to your re-
quest which reads:

"Will you please advise me whether
these transactions by the insurance com-
pany and Insurance Funeral Service, or
either of them, are in conflict with Sec-
tions 23 and 24 of Article 5068-1, or
Article 5053, Vernon's Texas Civil Stat-
utes, as amended."

The Sections from Article 5068-1 provide:

"Sec. 23. Any individual, indivi-
duals, firms, co-partnerships, corpora-
tions or associations doing the business
of providing burial or funeral benefits,
which under any circumstances may be
payable partly or wholly in merchandise
or services, not in excess of One Hundred
and Fifty ($150.00) Dollars, or the value

thereof, are hereby declared to be burial companies, associations or societies, and shall organize under provisions of Chapter 274, Acts of the Forty-first Legislature, 1929, and amendments thereto; and shall operate under and be governed by Chapter 274, Acts of the Forty-first Legislature, 1929, and amendments thereto, and this Act. It shall be unlawful for any individual, individuals, firms, co-partnerships, corporations, or associations, other than those defined above, to engage in the business of providing burial or funeral benefits, which under any circumstances may be paid wholly or partly in merchandise or services.

"Sec. 24. Policies or certificates issued by burial associations shall provide for payment of the benefit in certain stipulated merchandise and burial service, which shall be scheduled in the policy or certificate and approved by the Board of Insurance Commissioners as being of the reasonable value as stated in the face of the policy unless the insured shall at the time said policy is issued elect to have same paid in cash. The policy shall show in writing the election made. If the association issuing said policy shall fail or refuse to furnish the merchandise and services provided for in the policy, same shall be paid in cash."

Briefly, American National has modified an industrial life insurance policy to provide for payment upon the death of the insured "at the direction of the beneficiary" to Insured Funeral Service or to Insured Funeral Service and Texas Funeral Directors and Embalmers Association the proceeds of the policy which contains provisions designed to leave an option with the beneficiary to receive or direct payments otherwise. The salesmen, agents of the insurance company, endeavor also to secure an assignment of the proceeds of the policy from the insured to Insured Funeral Service or the Association in consideration of which Insured Funeral Service issues an agreement, called a "Funeral Service Contract," to apply such proceeds to the purchase of a funeral. The latter also obligates Insured

Funeral Service to select a staff of "approved" funeral
directors who will, under contract, bury the deceased
in a proper manner and    give him as much for his in-
surance as would be given to those paying a like amount
other than through the insurance arrangement.  This
contract generally outlines items of service which the
"approved" funeral directors will furnish under various
circumstances.  All is contingent upon payment by Amer-
ican National of the proceeds of the policy to Insured
Funeral Service.  Any excess of proceeds above the
funeral director's charges go to the beneficiary named
in the policy or other authorized person.

These contracts are implemented by supplement-
ary contracts between Insured Funeral Service and vari-
ous funeral directors or the Association acting in the
latter's behalf.  Bonds are contemplated to assure per-
formance of the mutual obligations, and Williams is
paid some character of remuneration by American Nation-
al in connection with the "plan," the exact nature of
which is not stated except that it is not for direct
selling of the policies involved.  The "plan" is to be
presented to the public by a sales program sponsored by
the insurance company through its agents and otherwise
which points out the advantages of the "plan."

The first question is whether Insured Funeral
Service or American National, or both, are engaged in
the business of providing burial or funeral benefits
which under any circumstances may be paid wholly or
partly in merchandise or services.

Although the exact legal relationship of the
parties involved in the "plan" is not fully developed
by the facts submitted, it is clear that there exists
an arrangement or device carefully designed by which
the insured may provide in advance for a funeral for
himself.  Under the "plan," the insured assigns the pro-
ceeds from the insurance policy to Insured Funeral Serv-
ice or Insured Funeral Service and Texas Funeral Direc-
tors and Embalmers Association, and receives a funeral
service contract along with the policy of insurance
from Insured Funeral Service.  In turn, the beneficiary
of the insured receives merchandise and services or part
merchandise and services and part cash, or all cash in
the face amount of the policy.

The plain language of Sections 23 and 24 of Article 5068-1, supra, requires an examination of all that stands behind the contractual veil. It is suggested that the prime intention of the insured in participating in the "plan" is to purchase a funeral for himself. It is not questioned that he actually receives, in some instances, a funeral as a result of the operation of the "plan." If the insured intends to purchase a funeral when he enters into the contracts designed to ultimately accomplish that purpose and actually receives a funeral as a result of participation in the "plan" all doubt that the "plan" in question "sells" a funeral is resolved.

Insured Funeral Service undoubtedly causes, in some circumstances, funeral merchandise and services to be furnished the deceased policyholder who has assigned the proceeds of his policy for that purpose. Discharge of this responsibility is the end result of and accomplishes the purpose for which the "plan" is designed, that is, to provide funeral service benefits in merchandise and services. Thus the plan operates to proximately result in a circumstance which the statute prohibits.

Section 23, supra, prohibits companies and all others not organized under the provisions of Chapter 274, Acts of the Forty-first Legislature, 1929, and amendments thereto, from:

"... providing burial or funeral benefits, which under any circumstances may be paid wholly or partly in merchandise or services." (Emphasis added)

Webster's New International Dictionary, Second Edition, Unabridged (1938), defines "circumstance" as "one of the conditions under which an event takes place or with respect to which a fact is determined; a condition, fact or event accompanying or determining the occurrence of, another fact or event; ... an accessory condition; an attendant fact or qualification; often, a more or less extraneous condition; a non-essential or casual detail...."

In Graff v. Scott Bros., Inc., 172 Atl. 659 (Pa. Supp. 1934), the court defined "circumstances" as

"... those things present, or reasonably likely to be present..." and in Salter v. State, 135 S.E. 408 (Ga. Supp. 1926), the following language is noted:

"... Circumstances are facts or things standing around, or about some central fact...."

We cannot agree, although it is strongly and ably contended, that these contracts and transactions are separate and independent and should be so construed. It is undoubted that instruments executed at the same time or contemporaneously for the same purpose and in the course of the same transaction are to be considered as one instrument and read and construed together; that parole evidence is admissible to connect instruments where one instrument is made a part of another by reference; that the same rule applies to the original contract and an assignment thereof; and that several instruments constituting part of the same transaction must be interpreted together,  10 Tex. Jur. 286, Contracts, Sec. 166, and cases there cited; 12 Am. Jur. 781, Contracts, Sec. 246, and cases there cited.

In 3 Williston on Contracts (Rev. Ed. 1936) 1801, 1803, Sec. 628, it is said:

"Where a writing refers to another document, that document, or so much of it as is referred to, is to be interpreted as part of the writing....  Where a writing does not refer to another writing, if such other writing was made as a part of the same transaction, the two should be interpreted together ... and though the writings in question were neither executed on the same day, nor made by the same parties, the later writing may so far pertain to the same transaction as the earlier that its meaning at the time and place that it was made can be understood only by reference to the earlier writing...."  (Emphasis added)

We think the contracts involved in the "plan" all relate to the same transaction or subject matter and

therefore must be taken and construed together as though they were one instrument. <u>Wann v. Metropolitan Life Ins. Co.</u>, 41 S.W.2d 50 (Comm. App. 1931); <u>Lloyds America v. Friend</u>, 91 S.W.2d 766 (Tex. Civ. App. 1936, error ref.); <u>Davis v. Volunteer State Life Ins. Co.</u>, 135 S.W.2d 588 (Tex. Civ. App. 1939, error ref.); <u>Simms Oil Co. v. Colquitt</u>, 2 S.W.2d 421 (Comm. App. 1928); <u>Ellett v. McMahon</u>, 187 S.W.2d 253 (Tex. Civ. App. 1945).

As we construe the statute, its purpose is to prevent impositions by discharge of contracts at maturity in merchandise or services improvidently contracted for in advance by those entirely unfamiliar with their value or the relation of that value to the premiums paid during the life of the insured. The "plan" under consideration is clearly susceptible to most, if not all, of the abuses inherent in ordinary funeral policies payable in merchandise and services. The funeral service insurance "plan" under consideration, though the policy is payable in cash by American National, carries the same evils that are present in policies payable wholly in merchandise or services. The "plan" supports and encourages the beneficiary's tendency to allow delivery of the policy's proceeds to some other person or persons for whatever funeral the money will buy without regard to whether an expensive funeral is consistent with the needs of the survivors and creates the means for the abuse the statute prohibits. <u>Daniel v. Family Security Life Insurance Co.</u>, 336 U.S. 220 (1949).

We conclude that the effect of the "plan" submitted is to provide burial or funeral benefits which under some circumstances are paid and received wholly or partly in merchandise or services and is therefore unlawful under the statute, and you are so advised.

Since in our answer we hold that the "plan" contravenes, in its operation, Sections 23 and 24 of Article 5068-1, V.C.S., we do not deem it necessary to consider the application of Article 5053, V.C.S., to the "plan."

## SUMMARY

The funeral service policy "plan" of American National Insurance Company described in the facts submitted conflicts

with Sections 23 and 24 of Article 5068-1, V.C.S., and is therefore unlawful.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

By:
Everett Hutchinson
Assistant

Charles D. Mathews
Executive Assistant

EH:db