Ratcliff *v.* Myers, Appellant.

Argued January 7, 1955.    Before Stern, C. J.,
Stearne, Jones, Bell, Chidsey and Musmanno, JJ.

*Edward B. Bulleit,* with him *Bulleit & Bulleit,* for appellants.

*Frank B. Boyle,* with him *Markowitz, Liverant, Boyle, Rahauser & Kagen,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, May 4, 1955:

In these proceedings, initially instituted to recover damages arising from a right angle collision between two automobiles, the verdict of the jury has brought about an illogical and therefore untenable result.

At about eleven o'clock in the morning of a clear March day, one Lawrence Yost was driving a Packard car south on Highway Route 194 in the Borough of East Berlin, Adams County. At the same time one Sterling Myers was operating a Chevrolet car west on Highway Route 234 in that Borough. The two cars collided at the intersection of these two highways which forms the "Center Square" of the Borough. Joseph Ratcliff, a passenger in the Yost car, was injured in the collision and brought suit to recover damages against Sterling Myers and the latter's father, Albert, on whose business Sterling was driving the Chevrolet. The defendants brought in Yost and his employer, the Bryant Air Conditioning Corporation, as additional defendants. In so joining them Sterling Myers claimed also to recover from them the damages which he himself had suffered in the accident, and Albert Myers claimed to recover the damages to his automobile. Yost, on the other hand, filed a counterclaim against Sterling

and Albert Myers to recover the damage to *his* automobile.

The court allowed the jury to view the scene of the accident. The testimony at the trial disclosed that the two automobiles, each proceeding at a reasonably low rate of speed and traveling on the right side of their respective roadways, reached the intersection at about the same time. They met at or near the center of the intersection, the left front of the Yost car and the right front of the Myers car coming into contact. There was a traffic light overhanging the center of the intersection; it showed a green light for Myers proceeding westward on Route 234 but no light at all to Yost coming south on Route 194 as the red light was out of order and was not functioning. Yost testified that as he started to enter the intersection he could see about 40 or 50 feet to his left; he looked and saw nothing coming; he went ahead and when he was about half way into the intersection he looked again and the Myers car was then about 20 feet away. Sterling Myers testified that *he* looked, saw the green light in his favor, and the next thing he knew he "was in the intersection and we were in collision"; he said that when he first noticed the Yost car "seeing and hitting was just one."

The trial judge held that Sterling Myers was guilty of contributory negligence as a matter of law and entered compulsory nonsuits as to his and his father's claims against the additional defendants. However, he left to the jury to determine, in plaintiff's action against the original defendants, whether Myers was in fact negligent. He also submitted to the jury whether Yost was negligent, and whether plaintiff was entitled to recovery against the original defendants, the additional defendants, or both, and whether Yost was entitled to recover on his counterclaim. The jury re-

turned a verdict in favor of the plaintiff in the sum of $12,500 against the additional defendants, Yost and the Bryant Corporation, but a verdict in favor of the original defendants, Sterling and Albert Myers. The latter moved to take off the compulsory nonsuits entered in their actions against the additional defendants; this motion the court denied. The additional defendants moved for judgment n.o.v. against the original defendants with respect to plaintiff's claim and also with respect to Yost's counterclaim; this motion the court also denied. The additional defendants also moved for a new trial on the ground that the court should have charged the jury that the original defendants were negligent as a matter of law and therefore jointly liable to the plaintiff with the additional defendants; the court granted a new trial, limiting the issue to the liability of the original defendants in conjunction with that of the additional defendants for the happening of the accident. Two appeals to this court have resulted from those rulings,—one, that of the original defendants from the grant of a new trial; the other, that of the additional defendants from the refusal of their motion for judgment n.o.v. against the original defendants.

It must be immediately apparent that, as the result of the jury's verdict, there exists an anomalous situation in that, on the one hand, the court declared that Sterling Myers was guilty of contributory negligence as a matter of law and that therefore he could not recover from the additional defendants, but, on the other hand, the Jury found him not guilty of negligence as a matter of fact and therefore the plaintiff could not recover from him and his father. Certainly he was either negligent or not negligent, and his legal rights and liabilities in relation to all the other parties in-

volved in the accident should follow a consistent pattern. The court, recognizing this, and obviously and properly regarding the jury's verdict exculpating Sterling Myers as perverse, granted a new trial in order to have a jury again pass on the fact of his negligence.

Was the court right in declaring Sterling Myers negligent as a matter of law in the matter of his claim against the additional defendants? It is well established that an operator of a motor vehicle who does not look for moving traffic on an intersecting street as he approaches the intersection is guilty of negligence as a matter of law even though he proceeds across the intersecting street with a traffic light in his favor: *Lewis v. Quinn*, 376 Pa. 109, 101 A. 2d 382. Myers himself admitted that "seeing and hitting was one," which is proof positive that he could not have looked up Highway Route 194 before entering the intersection; it must also be borne in mind that the Yost car, coming from the right, had the right of way. It is true that the jury viewed the scene of the accident but this was merely in order to enable them the better to understand the testimony and to visualize the occurrence; if they saw anything which might tend to relieve Myers of liability it is not a part of the record and cannot weigh against the evidence. The court was therefore justified in declaring Myers guilty of contributory negligence as a matter of law, and indeed he has not appealed from that ruling. Under such circumstances there was nothing for the court to do but grant a new trial in plaintiff's action since a verdict so incompatible with the decision of the court and so patently contrary to the weight of the evidence could not be allowed to stand.

Yost and the Bryant Corporation, the additional defendants, do not challenge the propriety of the verdict that has been rendered against them in favor of

the plaintiff.[1] By thus admitting that Yost was negligent it is clear that they have no right to judgment on their claim against the original defendants.[2] However, they do have the right to make the original defendants share their liability to the plaintiff if those defendants were in fact also guilty of negligence which helped to cause the accident, and therefore, while plaintiff himself has not asked for a new trial against the original defendants it was proper for the court to grant one on the motion of the additional defendants. It was also proper for the court to restrict the new trial solely to the determination of the question of the liability of the original defendants, leaving undisturbed plaintiff's verdict against the additional defendants as well as the amount of the recovery to which he will be entitled against the original defendants should it be adjudged that Sterling Myers was negligent: *Trerotola v. Philadelphia,* 346 Pa. 222, 226, 227, 29 A. 2d 788, 790; *Felo v. Kroger Grocery & Baking Co.,* 347 Pa. 142, 145, 31 A. 2d 552, 554; *Jones v. Williams,* 358 Pa. 559, 562, 58 A. 2d 57, 59; *Frank v. W. S. Losier & Co., Inc.,* 361 Pa. 272, 277, 64 A. 2d 829, 831.

The original defendants urge that, since plaintiff and Yost were fellow-employes of the Bryant Corporation and were at the time of the accident engaged on a business mission for their employer, the negligence of Yost should be imputed to the plaintiff. However,

---

[1] It seems that plaintiff was, like Yost, an employe of the Bryant Corporation, and the latter so pleaded in its answer to the complaint of the original defendants and that therefore plaintiff could recover from it only under the Workmen's Compensation Law. However, neither at the trial itself, nor in any of the subsequent proceedings, nor on this appeal, has it raised that issue.

[2] The jury apparently returned no verdict on Yost's counterclaim, presumably because they had found him guilty of negligence and Myers not guilty of negligence.

it is well established that this did not constitute Yost and the plaintiff participants in a joint enterprise such as to make the negligence of Yost imputable to the plaintiff: *Mayo, Executrix v. Fahs,* 339 Pa. 180, 186, 187, 14 A. 2d 105, 108; *Marmar v. Farrell,* 116 Pa. Superior Ct. 586, 177 A. 224; *Ward v. Philadelphia Rapid Transit Co.,* 117 Pa. Superior Ct. 120, 124, 177 A. 485, 486; *McDougall v. Schaab,* 117 Pa. Superior Ct. 285, 288, 289, 178 A. 168, 169; *Kocher v. Creston Transfer Co.,* 166 F. 2d 680, 685; Restatement, Torts, §491, comment d.

The order of the court denying the motion of the additional defendants for judgment n.o.v. against the original defendants is affirmed. The order of the court granting a new trial, in which the issue shall be limited to the liability of the original defendants in conjunction with that of the additional defendants for the happening of the accident, is affirmed.

———

DISSENTING OPINION BY MR. JUSTICE JONES:

The plaintiff, Ratcliff, while a passenger in an automobile owned and driven by the defendant Yost, received serious personal injuries in a collision. He sued Sterling Myers, the driver of the other car involved, for damages on the ground that Myers' alleged negligence was the proximate cause of the accident. Myers filed his praecipe for a writ joining as additional defendants Yost and the latter's employer, Bryant Air Conditioning Corporation, on whose business Yost was engaged at the time of the collision. Also, Myers and his father, Albert, the owner of the car which the son was driving at the time of the accident on his father's business, instituted a separate action against Yost and his employer to recover for personal

injuries to Sterling Myers and for damage to Albert Myers' car. Yost filed a counterclaim in this action, claiming damages of the Myers for injury to his automobile. Ratcliff thereupon filed a praecipe for a writ to join Albert Myers as an additional defendant in his action against Sterling Myers. By order of the court, all actions were consolidated for trial and were tried together. From the foregoing it is manifest that the pleadings were unusually extensive. Indeed, a lengthy opinion by the court was required in order to straighten out the procedural situation in advance of trial.

The basic error committed below lies in the trial judge's improvident entry of a compulsory nonsuit as to the claims of Sterling Myers and his father on the ground that Sterling was guilty of contributory negligence *as a matter of law*. It was that error, and not the jury's verdict, which brought about the "illogical and therefore untenable result" of which the majority opinion makes mention.

The trial judge, although having declared Sterling Myers guilty of negligence as a matter of law and having accordingly withdrawn from the jury the Myers' claims against Yost and his employer, felt required nonetheless by the necessities of due process to submit to the jury the question of Sterling Myers' negligence in connection with the claims against him and his father by Ratcliff and Yost for the injuries and damage allegedly suffered by them as a result of the collision. In view of the testimony and, especially, the physical situation existing at the scene of the collision, the jury exculpated Sterling Myers of any fault and returned a verdict in his and his father's favor with respect to both Ratcliff's and Yost's claims against them and a verdict for Ratcliff in a substantial sum against Yost for his personal injuries.

Confronted with the "anomalous situation", as the majority opinion terms it, produced by the withdrawal from the jury of the Myers' claims on the ground that Sterling was guilty of negligence as a matter of law and his subsequent exoneration from any fault by the jury's verdict, the learned court below, after argument on motions by the parties following the verdict, compounded the original error by entering an order awarding Ratcliff a new trial "limited to the liability of Sterling Myers and Albert Myers in conjunction with that of Yost for the happening of the accident" and denying the motions of Albert and Sterling Myers to take off the compulsory nonsuits entered in their actions against Yost and his employer.

The majority opinion states that the Myers have appealed from the grant of a new trial. What they actually appealed from was the court's *order* of July 17, 1954, which granted (1) a new trial as to them, in conjunction with Yost, *and* (2) denied their motions to take off the compulsory nonsuits entered against them. Both matters were, therefore, assignable here for error. But, that is no longer important. The Myers, in their brief in this court, make no point of the lower court's refusal to remove the nonsuits and they limit their present complaint to the grant of a new trial as to them. However, they do not concede that Sterling was guilty of negligence as a matter of law. Nor is any inference to such effect justly to be drawn against them.

What we should now do is reverse the unwarranted order granting a new trial in Ratcliff's action against the Myers and direct that judgment be entered on Ratcliff's verdict against Yost. Thereby, we would not only be doing justice in keeping with the jury's discriminating verdicts but, at the same time, we would avoid the confusion that is bound to ensue if the case

goes back for a retrial on the limited basis to which this court's order attempts to confine it. To relitigate the question of Sterling Myers' alleged negligence as a proximate cause of Ratcliff's injuries without allowing the Myers to contest the amount of damages recoverable and permit the jury arbitrarily to hold them liable for the amount of the award against Yost, which has never yet been adjudicated against them, would constitute a deprivation of property without due process of law. Nor is that unconstitutional situation obviated by the procedure which the majority opinion now advances and which, in effect, would be an action limited to imposing liability on the Myers for contribution on account of Ratcliff's verdict against Yost. The question of want of due process where a party is adjudged liable for an arbitrary sum, as to the amount of which he is entitled to, but is not accorded, a jury's finding, was neither raised nor considered in any of the cases cited by the majority opinion.

The collision occurred about 11 A.M. on a March morning, now four years ago, in the right-angle intersection of State Highway Routes 194 and 234 which (widened out) form the center square of East Berlin, Adams County,—a village of less than a thousand inhabitants.[1] At the time of the accident, the sky was cloudy but the weather was clear and the roads dry. Highway Route 194 runs north and south and is referred to by the court below as Harrisburg Street, while Route 234 runs east and west and is likewise referred to as York Street. Myers was proceeding westwardly on York Street, the destination of his errand being the East Berlin Milling Company, just west of the center square. The speed of his car was not over 25 miles per hour and was slower than the speed of the Yost

--------

[1] See Vol. 91, The Pennsylvania Manual, p. 998.

car. Yost, who was passing through East Berlin on his way to Hanover, some few miles distant, had entered the town at a speed of 45 to 50 miles per hour, and it was not until he was within 75 yards of the intersection that he slowed down to possibly, *but not less than,* 25 miles per hour. Traffic at the intersection was regulated by an overhead electric signal which alternately flashed a green, amber and red light and was suspended over the center of the intersection. The signal was green for Myers as he entered the intersection. No light was showing on Yost's side—a circumstance which Ratcliff called to Yost's attention. Nevertheless Yost entered the intersection without ascertaining whether the signal light was green for traffic across his course.

The right-hand front of the Myers car and the left-hand front of the Yost car collided. The force of the initial impact swung the rear of each car around toward the other until they bumped together causing damage to the right rear of the Myers car and the left rear of the Yost car. The cars came to rest in the southwest quarter of the center square well to the west (i.e., the direction in which Myers was driving) of the median line of Route 194 on which Yost had been traveling. The record is barren, however, of any measurements showing the widths of the intersecting highways, the dimensions of the center square or the distances from the respective curb lines to the point of collision. At the request of Ratcliff's counsel the court permitted the jury to view the scene of the collision and the surrounding locality and, in charging the jury later, the trial judge said, "You people, of course, had the benefit of viewing the situation, seeing the ground, and in their arguments counsel have indicated to you what view was obtainable basing that on the recollection of what you saw." However, we do not predicate any-

thing on what the jury may possibly have seen at the view. There is nothing of record to indicate what they saw. Manifestly, the questions involved are to be dealt with on the basis of the evidence adduced at trial. And, such evidence and the reasonable inferences to be drawn therefrom must be taken in the light most favorable to Myers not only because the jury's verdict was in his favor but also because the nonsuit against him was entered compulsorily.

In addition to the position of the automobiles in the center square after the collision, as above related, the testimony is that at the time of the collision each driver was proceeding on the right-hand side of his respective roadway. From that, it follows with mathematical precision that Myers was beyond the center line of the intersection and Yost had just entered the intersection when their automobiles came together. This fact was confirmed by the trial judge when he said in his instructions to the jury that "The Myers' car, of course, had traversed half of Harrisburg Street [Route 194] and a little bit more than half of Harrisburg Street in order to arrive at the point of impact." How, then, could Myers possibly be declared negligent *as a matter of law*? He had entered the intersection on a green light and had proceeded more than halfway through the intersection when Yost's car, which had just entered the intersection a few feet away without a favorable signal, had come upon him. Ratcliff testified that, at the time the two cars came together, "We [i.e., he and Yost] were *practically* in the intersection. We were in—*to* the intersection" (Emphasis supplied).

The learned trial judge concluded, however, that Myers was guilty of negligence as a matter of law because when asked when he first saw the Yost car, he laconically replied "Well, almost seeing and hitting was one" and twice, thereafter, substantially repeated

the same cryptic answer. Granted that Myers did not see the Yost car until it was upon him, he had progressed so far in his crossing in pursuance of his right of way that any question of his want of care in the existing circumstances was a question of fact for the jury. In *Graff v. Scott Bros., Inc.,* 315 Pa. 262, 265, 172 A. 659, the plaintiff approached a right-angle street intersection which he entered on a green light, having observed that traffic to his right on the one-way cross street had halted in apparent obedience to a red light. While proceeding across the intersection, he was struck by defendant's car which had moved through an open lane in the arrested traffic on the cross street. The plaintiff testified in that case that he did not see the defendant's car *until the instant of the collision.* In affirming a judgment for the plaintiff, Mr. Justice MAXEY said for this court,—"Certainly the fact that he [the plaintiff], after seeing the traffic light and the arrested traffic, did not make further observations, does not disclose such negligence on his part that the court would be justified in declaring it as a matter of law." Here, Myers' right to assume that approaching traffic on the cross street would not violate the red light, which should have been showing there, was the equivalent of arrested traffic when he entered the intersection on a green light. A motorist has a right to assume that a traffic light favorable to him will be obeyed by traffic on a cross street: *Zurcher v. Pittsburgh Railways Company,* 353 Pa. 212, 215-216, 44 A. 2d 581. See also *Jones v. Williams,* 358 Pa. 559, 564, 58 A. 2d 60, where it was held that the plaintiff could not "be adjudged negligent for committing himself to the intersection, for with a 'Stop Sign' facing the [defendant's] truck before it got into the intersection *he [the plaintiff] had a right to assume* that no vehicle coming . . . into the intersection would enter the inter-

section at a speed of 16 or 18 miles an hour" (Emphasis supplied). The speed of Yost's unbidden entrance was not less than 25 miles an hour. Myers, proceeding on a green light and without knowledge that the stop signal for the cross street was not operating, had every reason to assume that traffic on the cross street, if any, would heed the traffic signals. And so, as in the *Graff* case, supra, a lack of further observations by Myers did not disclose such negligence on his part that the court was justified in declaring it as a matter of law.

The majority opinion infers from Myers' frank statement that he did not see the Yost car until it collided with his own that he must not have looked to his right before entering the intersection. The conclusion does not rest on fact. Myers did not testify and was not asked whether he had looked to his right or left before entering the intersection. And, no one says that he did not. Nor can such adverse inference be drawn as a matter of law on the assumption that, had Myers looked to the north on Harrisburg Street prior to the collision, he would have seen Yost approaching the intersection. At Myers' then stage of progress through the intersection, whether he was guilty of negligence in not turning his head to look from side to side was a question of fact for the jury. To borrow an apt observation of a learned jurist,— "[N]o automobilist attentive to the driving of his car can continue to look long in any direction unless that direction is forward."

To say, as the majority now hold, that Myers failed to see what was observable up the side street, had he looked, and is, therefore, guilty of negligence as a matter of law is to apply the rule of incontrovertible physical facts to a situation where it is not germane. That rule is not applicable to varying or estimated distances

or to indefinite locations but only where the act, which is alleged to be negligent, was performed in relation to *a fixed physical condition,* such as where one is injured on a railroad crossing without having stopped, looked or listened or where he is hit by an automobile immediately upon stepping from the curb onto the highway or where he is struck by a trolley car on the first rail of the track.

In *Galliano v. East Penn Electric Co.,* 303 Pa. 498, 502, 154 A. 805, Mr. Justice MAXEY, with characteristic pungency, stated that "A 'go' signal at a street intersection confers no authority on either a motorman or a chauffeur who receives this signal to proceed across that intersection regardless of other persons or vehicles *that may already be within it.* It is not a command to go but a qualified permission,—i.e., a permission to proceed lawfully and carefully in the direction indicated. It does not mean that the person receiving the signal may proceed without a care or thought as to the safety of others *who may be in his path"* (Emphasis supplied). It is plain enough that what the learned justice was speaking about was that one at a street intersection, having a "go" signal, could not on that account proceed without regard for the safety of those already in the intersection and in his pathway. However, from that clear and sound pronouncement there unfortunately appears to have grown up an idea that one having the green light at a street intersection must not only observe and be careful for the safety of those already in the intersection and in his pathway but he must also look up and down the cross streets, and continue so to do as he proceeds across, in anticipation of law violators on the cross street who perchance might not heed the stop signal or red light against them. If that should become the fixed rule, then we shall have nullified completely the

use of electric traffic signals which have been one of the greatest contributions to the safety of both pedestrians and automotive travelers at street intersections.

Moreover, the jury's verdict in favor of Myers was not due to any trial error or instruction by the court advantageous to him. On the contrary, the learned trial judge erroneously charged that, since the traffic signal was not showing a light in the direction of Yost's approach, the situation was the same as if there were no traffic signal at all at the intersection and, for that reason, Yost, who was on Myers' right, had the right of way. The error of that instruction is twofold. First, there is neither rule of law nor regulation of The Vehicle Code that obliterates the effect of electric signal control of traffic at a street intersection when one of the lights happens not to be operating. Obviously, where a traffic signal is not showing a light, it is an approaching driver's duty to proceed with caution on the assumption that the light may be showing green for cross traffic. Second, "the rule of the right" pertains to a situation where two drivers arrive at a street intersection more or less simultaneously and there is neither mechanical nor manual traffic control. As we have already seen, Yost and Myers did not arrive at the intersection at the same time. Myers was more than half way through the intersection, and at a slower speed than Yost, when the latter first entered the intersection.

The real anomaly in this case is that Myers, who had entered the intersection on a green light and had proceeded past the center line of the cross street, when the collision occurred, had his claim against Yost arbitrarily withdrawn from the jury whereas Yost, whose negligence was glaring, and is not questioned here, was accorded the privilege of having his claim against the Myers submitted to the jury. But, the jury, which saw

and heard the witnesses and had an understanding of the circumstances, found Yost culpable and exonerated Myers.

I would reverse the order and direct that judgments be entered on the verdict.

Mr. Justice CHIDSEY joins in this dissent.