## Gross *v.* Smith, Appellant.

Argued January 14, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Samuel D. Frederick,* with him *Robert B. Doll,* and *Snyder, Wert, Wilcox, Frederick & Doll,* for appellants.

*Morris Perkin,* with him *James D. Christie,* and *Perkin, Twining & Dower,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 18, 1957:

The defendant, Casper Smith, owner and operator of an auto tractor, and the defendant, Max W. Smith, owner of a trailer attached to the auto tractor, charge the plaintiff Renee Gross with contributory negligence in an accident which resulted in her being awarded a verdict of $8,825. The accident occurred at the corner of Eighth Street and Union Street in the City of Allentown at the hour of midnight on April 30, 1955.

When the plaintiff, travelling southwardly on Eighth Street, arrived at the bisecting East-West Union Street, she stopped for a red light and, to the extent that the blanket of darkness relieved by street illumination allowed her vision to penetrate into the intersecting streets, she looked to her left (eastwardly) on Union Street and found it barren of traffic. Her view in this direction was somewhat limited because of a linoleum store building which jutted out from the normal building line. When the traffic light changed to green, she started forward, but before actually committing herself to the intersection she again surveyed the scene, once more taking in the entire periphery of the forward half of her seeing circle, and again met nothing on the radar screen of her vision. As she got

to the middle of the intersection, however, a shadow loomed to her left only a foot away, and, in the instant, the defendants' tractor-trailer crashed into the left side of her car, inflicting serious injuries which are not in issue in this appeal.

The defendants contend that the plaintiff is guilty of contributory negligence as a matter of law because if she had looked to the left she had to see the defendants' vehicle on Union Street. But what the defendants announced with complacent self-assurance is not as easily discernible as they emphasize. Accidents do not ordinarily happen at a leisurely pace or with the retardation of a slow motion picture. Cars move and stop, move again, lights change, there are sweeping glances and suddenly the night air (if it is night, and the day air if it is day) is shaken with the ugly noises of clashing and grinding steel, tin, glass, and often human bone and flesh. And when we as an appellate court endeavor to reconstruct the happening which shall bring us to a decision, we are obliged, where the plaintiff has a verdict, to accept his or her testimony and all the testimony that supports his or her recollection, as fully established as if fate had written the account with a diamond point pen of indestructible finality. Confronted with that unalterable picture of irrevocability we see the plaintiff doing all that the law requires, demands, and expects, if she is to recover damages as the result of the untoward event, out of which she emerged, with a broken pelvis, plus fractured ribs.

The intersection of Eighth and Union Streets is not a geometrically regular square neatly pierced by four mathematically balanced rectangular street approaches. The northeast corner of Union Street is seven feet south of the northwest curbline. To the plaintiff's right the projection of Union Street is broken by a diagonally

debouching Jackson Street which feeds additional traffic into Union Street. The plaintiff, for her own safety, had to give thought to the possibility of cars turning from Jackson in Union Street and crossing her path as, indeed, she also had to reflect on the traffic passing over the bridge for which she was heading on Eighth Street. Apportioning her time and attention to all these portals of possible danger, she gave to East Union Street its share, being fortified by the thought that there, with a red light blocking all cars, it was not necessary, even if it were possible, to keep her eyes fastened on that single spoke of the traffic wheel which surrounded her. In the moments which intervened between the last time she looked down Union Street and the instant of the impact, the defendants' tractor-trailer broke through the red light interdiction and accomplished the havoc already described. It is difficult to see how, in a situation of that character, we can reverse the verdict of the jury and say that as a matter of law Renee Gross was guilty of contributory negligence.

It is true that the plaintiff did not have as clear a view of East Union Street as might have been desirable, the linoleum store building obscuring a long distance observation. But architects do not plant their buildings to accommodate passing motorists, nor can motorists ask building owners to move their structures to give them a longer and more enlarged scope of visibility. Motorists, like everybody else, must take the world as it is and they are required to use their senses as reasonably prudent persons would use them in order to avoid injuring others or themselves. Once they have met those requirements, they have discharged their obligation to law and to society.

No traveller on the highway is required to anticipate that others using the highway will violate the law. Renee Gross entered the locale, which was later to be

the scene of vehicular crash, armed with this legal advantage: Under Section 635 of The Vehicle Code she had the advantage of a green light.

The learned lower Court in affirming the judgment in favor of the plaintiff, justifiably quoted in support of his decision from the case of *Koehler v. Schwartz,* 382 Pa. 352, where this Court said: "Before entering the intersection the plaintiff here looked to the left and then to the right. No traffic was approaching from either direction and the intersection was clear of traffic. When he looked to the left he could see 150 feet. He could not then anticipate when he was directing his attention to the other approaches to the intersection that the defendant would come up and in defiance of a red light head into the intersection. The law recognizes the extent and limitations of a normal man's vision. He cannot simultaneously look in four different directions. Having exercised the care of a reasonably prudent person he cannot be held accountable for the actions of a motorist who deliberately flouts the warning of a red light and drives ahead in utter disregard of the rights of others lawfully and properly with an intersection."

The lower Court also ably summed up the situation in this case as follows: "Considering that Union Street is only 34 feet wide between curbs, that plaintiff was already in the middle of the street when she was struck, that she was forced to watch for traffic crossing the bridge, much of which turns left into Jackson Street, as well as for traffic coming east on both Union Street and Jackson Street as they converge 100 feet or so west of Eighth Street, it is difficult to see how a driver could make more than one inspection to the east upon entering the intersection."

The defendants in their brief have cited several cases which, at a hasty glance, might seem to give aid, com-

fort, and persuasion to the position they maintain on this appeal, but a study of those cases with their own individual facts reveal that they can easily be distinguished from the facts which obtain here. We are satisfied that what was said in the case of *Graff v. Scott Bros., Inc.,* 315 Pa. 262, 264, could well apply to the issue before us here, and on that authority the judgment of the lower Court is affirmed. In the *Graff* case, the plaintiff had a green light in his favor with three cars panting on his right while an open space still allowed room for a fourth car on the verge of the intersection. He was struck by that fourth car which did not fail to arrive. It was claimed in that case that the plaintiff was guilty of contributory negligence. This Court rejected that contention and Justice MAXEY, speaking for a unanimous Court, realistically declared: "Appellant contends that the law is that every person entering an intersection has the 'duty of making due observation before entering an intersection, and this regardless of whether or not he had the right of way.' This proposition is sound but we find nothing in plaintiff's testimony which convicts him of failure to make 'due observation.' He made a sufficient 'observation' to see at his right three automobiles at a standstill, facing eastward. This also indicated to him that eastbound traffic had been stopped, by a red signal. He was asked in cross-examination: 'You didn't look to see if there were any cars coming from the west that could come through the open space?' He answered: 'Just at the time, no.' Appellant apparently bases its claim of contributory negligence on that question and answer. . . The law does not impose any such extravagance of duty upon a driver. In the first place the law recognizes the fact that the man at the wheel of a car cannot use his eyes exclusively in making observations of the right and left distant terrain. Certainly the fact that he,

after seeing the traffic light and the arrested traffic, did not make further observations, does not disclose such negligence on his part that the court would be justified in declaring it as a matter of law."

Judgment affirmed.